# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| LEO PELLEGRINO, | ) | CASE NO. 2:19-CV-01806-JP |
| Plaintiff, | ) | The Honorable John R. Padova |
| v. | ) |  |
| EPIC GAMES, INC., | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### EPIC GAMES, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.      **INTRODUCTION** ................................................................................................1

II.     **FACTUAL BACKGROUND** .............................................................................4

III.    **LEGAL STANDARDS** ......................................................................................6

IV.    **ARGUMENT** ....................................................................................................8

     A.    **All of Plaintiff's Claims Fail to State a Claim** ..................................8

         1.     Plaintiff's Right of Publicity and Privacy Claims Fail Because Plaintiff Cannot State a Claim .............................8

         2.     Plaintiff's Unjust Enrichment Claim Fails Because There is No Contractual Relationship Between the Parties ...................11

         3.     Plaintiff's Unfair Competition Claim Fails Because He and Epic Games are Not Competitors ...............................12

         4.     Plaintiff's Trademark Claims Fail As He Has Failed To Adequately Allege A Valid Trademark .............................12

         5.     Plaintiff's Dilution Claim Fails As Plaintiff Does Not Allege Trademark Use By Epic Games ................................13

     B.    **Several of Plaintiff's Claims Are Preempted by the Copyright Act** .........14

     C.    **All of Plaintiff's Claims Are Barred By The First Amendment** ...............19

         1.     Plaintiff's Right of Publicity and Privacy Claims Fail Under the Transformative Use Test ..................................20

         2.     The *Rogers* Test Bars Plaintiff's Unjust Enrichment, Unfair Competition, and Trademark Claims ...............................24

V.      **CONCLUSION** ...............................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Ins. Co. of N. Am.*,
No. 06 Civ. 4326, 2006 WL 3702641 (E.D. Pa. Dec. 12, 2006) ..............................................6

*Arsenal, Inc. v. Ammons*,
No. 14 Civ. 1289, 2014 WL 6771673 (E.D. Pa. Dec. 2, 2014) ..........................................7, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................................6

*United States ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*,
104 F.3d 1453 (4th Cir. 1997) ..................................................................................................15

*Boring v. Google, Inc.*,
598 F. Supp. 2d 695 (W.D. Pa. 2009) ........................................................................................7

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) .....................................................................................................15

*Brooks Grp. & Assocs. v. LeVigne*,
No. 12 Civ. 2922, 2014 WL 1490529 (E.D. Pa. Apr. 15, 2014) ..............................................19

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ................................................................................6, 24, 25, 28

*Brown v. Entm't Merchants Ass'n*,
564 U.S. 786 (2011) .........................................................................................................3, 10, 25

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ..................................................................................................................11

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
95 F.3d 959 (10th Cir. 1996) ....................................................................................................11

*Cummings v. Soul Train Holdings LLC*,
67 F. Supp. 3d 599 (S.D.N.Y. 2014) ...........................................................................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ...............................................................................................................18, 19

*de Havilland v. FX Networks, LLC,*
    21 Cal. App. 5th 845 (Cal. Ct. App. 2018) ............................................................23

*Dille Family Tr. v. Nowlan Family Tr.,*
    No. 15 Civ. 6231, 2016 WL 7202073 (E.D. Pa. Apr. 21, 2016) ............................19

*Dillinger v. Elec. Arts Inc.,*
    No. 1:09 Civ. 1236, 2011 WL 2457678 (S.D. Ind. June 16, 2011) ..................24, 27

*Dryer v. Nat'l Football League,*
    55 F. Supp. 3d 1181 (D. Minn. 2014) ....................................................................17

*Dryer v. Nat'l Football League,*
    814 F.3d 938 (8th Cir. 2016) ..................................................................................17

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
    547 F.3d 1095 (9th Cir. 2008) ..........................................................................25, 28

*ETW Corp. v. Jireh Publ'g, Inc.,*
    332 F.3d 915 (6th Cir. 2003) ............................................................................12, 13

*Facenda v. N.F.L. Films, Inc.,*
    542 F.3d 1007 (3d Cir. 2008).......................................................................10, 17, 25

*Giordano v. Claudio,*
    714 F. Supp. 2d 508 (E.D. Pa. 2010) ....................................................7, 15, 16, 17

*GOLO, LLC v. HighYa, LLC,*
    310 F. Supp. 3d 499 (E.D. Pa. 2018) ......................................................................6

*Hart v. Elec. Arts, Inc.,*
    717 F.3d 141 (3d Cir. 2013)......................................................................20, 22, 23

*Hidden City Phila. v. ABC, Inc.,*
    No. 18 Civ. 65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019)........................... *passim*

*Info. Handling Servs., Inc. v. LRP Publ'ns, Inc.,*
    No. 00 Civ. 1859, 2000 WL 433998 (E.D. Pa. Apr. 18, 2000) ..............................18

*Kirby v. Sega of Am., Inc.,*
    144 Cal. App. 4th 47 (2006) ..........................................................20, 21, 22, 24

*Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes, Inc.,*
    No. 16 Civ. 589, 2016 WL 7404559 (W.D. Pa. Dec. 22, 2016)........................6, 18

*Laws v. Sony Music Entm't, Inc.,*
    448 F.3d 1134 (9th Cir. 2006) ................................................................................17

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
    964 F.2d 965 (9th Cir. 1992) ........................................................................10

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) ....................................................... *passim*

*Lohan v. Take-Two Interactive Software, Inc.*,
    31 N.Y.3d 111 (2018) ................................................................................9, 10

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012)........................................................25, 26

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) .....................................................................17

*Maule v. Phila. Media Holdings, LLC*,
    710 F. Supp. 2d 511 (E.D. Pa. 2008) .....................................................1, 9, 19

*Metrano v. Twentieth Century Fox Film Corp.*,
    No. 08 Civ. 086314, 2009 WL 10672576 (C.D. Cal. July 16, 2009) ....................28

*Midway Mfg. Co. v. Artic Int'l Inc.*,
    704 F.2d 1009 (7th Cir. 1983) .....................................................................10

*Midway Mfg. Co. v. Bandai-Am., Inc.*,
    546 F. Supp. 125 (D.N.J. 1982) ...................................................................10

*Mitchell v. Cartoon Network, Inc.*,
    No. 15 Civ. 5668, 2015 WL 12839135 (D.N.J. Nov. 20, 2015)...................... *passim*

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*,
    264 F.3d 622 (6th Cir. 2001) .......................................................................16

*Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*,
    No. 16 Civ. 6109, 2017 WL 3917040 (S.D.N.Y. Sept. 5, 2017)...........................19

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997).........................................................................16

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*,
    671 F.3d 526 (5th Cir. 2012) .......................................................................14

*Nicassio v. Viacom Int'l, Inc.*,
    309 F. Supp. 3d 381 (W.D. Pa. 2018)..............................................................7

*Novalogic v. Activision Blizzard*,
    41 F. Supp. 3d 885 (C.D. Cal. 2013) .............................................................25

*Parks LLC v. Tyson Foods, Inc*,
863 F.3d 220 (3d Cir. 2017)............................................................................19

*Pirone v. MacMillan, Inc.*,
894 F.2d 579 (2d Cir. 1990).............................................................................13

*Quadratec, Inc. v. Turn 5, Inc.*,
No. 13 Civ. 6384, 2015 WL 4876314 (E.D. Pa. Aug. 13, 2015)........................18

*Raucci v. Candy & Toy Factory*,
145 F. Supp. 3d 440 (E.D. Pa. 2015) ...............................................................18

*Rogers v. Grimaldi*,
975 F.2d 994 (2d Cir. 1989)........................................................................ *passim*

*Romantics v. Activision Pub., Inc.*,
532 F. Supp. 2d 884 (E.D. Mich. 2008)............................................................19

*Roxbury Entm't v. Penthouse Media Grp., Inc.*,
669 F. Supp. 2d 1170 (C.D. Cal. 2009) .......................................................24, 26

*Rudovsky v. West Pub. Corp.*,
No. 09 Civ. 00727, 2010 WL 2804844 (E.D. Pa. July 15, 2010)......................19

*Seale v. Gramercy Pictures*,
949 F. Supp. 331 (E.D. Pa. 1996) ................................................................11, 24

*Sims v. Viacom, Inc.*,
No. 09 Civ. 3521, 2009 WL 3856667 (E.D. Pa. Nov. 17, 2009).......................16

*Sivero v. Twentieth Century Fox Film Corp.*,
No. B266469, 2018 WL 833696 (Cal. Ct. App. Feb. 13, 2018)...............22, 23, 24

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
845 F.3d 1246 (9th Cir. 2017) .........................................................................18

*Sporting Times, LLC v. Orion Pictures, Corp.*,
291 F. Supp. 3d 817 (W.D. Ky. 2017)...............................................................25

*Sullivan Assocs., Inc. v. Dellots, Inc.*,
No. 97 Civ. 5457, 1997 WL 778976 (E.D. Pa. Dec. 17, 1997) ...................7, 11, 12

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .........................................................................18

*Tanksley v. Daniels*,
259 F. Supp. 3d 271 (E.D. Pa. 2017) ...............................................................6, 28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................6

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    576 F. Supp. 2d 463 (S.D.N.Y. 2008)................................................14

*TV One LLC v. BET Networks*,
    No. 11 Civ. 08983, 2012 WL 13012674 (C.D. Cal. Apr. 2, 2012)........19

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ..........................................................24

*Tyne v. Time Warner Entm't*,
    901 So. 2d 802 (Fla. 2005)...........................................................10, 11

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
    845 F.3d 652 (5th Cir. 2017) ............................................................17

*Whole Enchilada, Inc. v. Travelers Prop. Cas. Co.*,
    581 F. Supp. 2d 677 (W.D. Pa. 2008)..................................................9

*Wolstenholme v. Hirst*,
    271 F. Supp. 3d 625 (S.D.N.Y. 2017)................................................17

*World Wrestling Fed'n Entm't Inc. v. Big Dog Holdings, Inc.*,
    280 F. Supp. 2d 413 (W.D. Pa. 2003)....................................8, 20, 22

*Worthy v. Carroll*,
    No. 02 Civ. 6882, 2003 WL 25706359 (E.D. Pa. July 16, 2003)..........8

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1991).....................................................25

**Statutes**

42 Pa. C.S.A. § 8316........................................................................... *passim*

15 U.S.C. § 1125...................................................................................13

17 U.S.C. § 102.........................................................................3, 15, 16

17 U.S.C. § 301....................................................................................14

**Rules**

Rule 12(b)(6).........................................................................................6

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition* (5th ed.)...................................................13, 25

U.S. Copyright Office, Compendium of U.S. Copyright Office Practice (3d ed. 2017)...............14

Defendant Epic Games, Inc. ("Epic Games") submits this memorandum in support of its motion to dismiss Plaintiff Leo Pellegrino's ("Plaintiff") Complaint (Dkt. No. 1).

## I.   INTRODUCTION

Plaintiff's Complaint strains to impose unprecedented liability on Epic Games for including a dance step in its *Fortnite* video game as the "Phone It In" emote (one of hundreds of tiny customizations allowing players' avatars to celebrate on the game's virtual battlefield). Even assuming, *arguendo*, that Plaintiff has a "Signature Move" that he consistently performs—which certainly is not apparent from the videos referenced in the Complaint, each of which shows Plaintiff playing the saxophone while performing a variety of different steps—Plaintiff's claims still fail as a matter of law for a host of independent reasons.

*First*, all of Plaintiff's claims fail to state a claim.  With regard to Counts I–III, Plaintiff cannot state a claim for the violation of his **rights of publicity or privacy** as Pennsylvania law protects only a "likeness" to the extent that it constitutes an "actual physical likeness."  *Maule v. Phila. Media Holdings, LLC*, 710 F. Supp. 2d 511, 517 (E.D. Pa. 2008).  Yet, Plaintiff's claims are based on the use of his claimed "Signature Move," not his physical appearance.  Relatedly, Plaintiff has no right of publicity or privacy claim because Plaintiff cannot allege that anything in *Fortnite* is reasonably recognizable as Plaintiff himself.  The alleged appropriation of a dance move is plainly insufficient to support a claim under publicity or privacy laws, which focus on uses that depict individual people, not uses of general characteristics or movements.  Moreover, Plaintiff's statutory right of publicity claim fails for the additional reason that the Pennsylvania right of publicity statute expressly exempts "expressive works" (like *Fortnite*) from liability. 42 Pa. C.S.A. § 8316(e)(2)(iii).  There simply can be no claim under the statute against *Fortnite*.

Turning to Counts IV–V, Plaintiff also cannot satisfy critical elements of his **unjust**

**enrichment** and **unfair competition claims**.  Under Pennsylvania law, unjust enrichment requires a relationship between the parties that could be construed as contractual.  No such relationship exists here as Plaintiff merely alleges that Epic Games copied his "Signature Move." Moreover, unfair competition under Pennsylvania law requires that the plaintiff and the defendant be competitors.  Plaintiff has not and could not allege that he, as a saxophone player, is in competition with Epic Games, a video game publisher.

Further, as to Counts VI–VIII, Plaintiff has not and cannot allege the existence of a valid mark sufficient to support his **trademark claims**.  It is clear from the Complaint that Plaintiff considers his "signature movements" to be his likeness.  Compl. ¶ 25.  But a person's "likeness" is not a trademark; rather, a claimed mark must be one particular embodiment of that person's likeness—*e.g.*, a famous photograph or image—that has been used consistently as a source identifier for goods or services.  This is because a general likeness—*i.e.* someone's physical appearance or attributes—identifies an *individual*, but a trademark identifies the *source* of goods or services.  Plaintiff's videos show that he does not consistently perform any single move, but rather performs various moves, and performs each move differently in each performance.  Thus, Plaintiff cannot claim that there is a move that is his protectable trademark.  Plaintiff also cannot state a claim for trademark dilution (Count VIII) as Plaintiff does not and could not allege—as the statute requires—that Epic Games uses the "Signature Move" as its *own* trademark.

*Second*, Plaintiff's **publicity**, **privacy**, **unjust enrichment**, **unfair competition**, and **trademark infringement** claims (Counts I–VII) fail for the independent reason that they are preempted by the Copyright Act.  Both prongs of the preemption analysis are satisfied.  The **first prong** asks whether the work is within the general subject matter of copyright.  Here, Congress protected certain movements under copyright law (specifically, choreographic works), making

all movement the subject matter of copyright.  17 U.S.C. § 102(a)(4).  To be clear, for the purposes of preemption, it does not matter whether a particular movement is copyrightable or not as the law only requires that a work have the broad potential to fit in a copyrightable category. Moreover, Plaintiff's allegation that Epic Games copied a video of him performing his Move, Compl. ¶ 51, further supports a finding of preemption because the video is an "audiovisual work" clearly within the subject matter of copyright.  17 U.S.C. § 102(a)(6).  The **second prong** asks whether the claims seek to vindicate rights equivalent to those protected by copyright law. Here, Plaintiff's claims are premised on Epic Games' alleged "copying" of his claimed "Signature Move."  As the ability to prevent reproductions is the quintessential exclusive right under the Copyright Act, both prongs are satisfied and Plaintiff's claims are preempted.

*Third*, all of Plaintiff's claims fail for another independent reason, namely that they are barred by the First Amendment, which protects expressive works like *Fortnite*.  *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011) ("[V]ideo games qualify for First Amendment protection.").  The First Amendment bars all of Plaintiff's claims in two ways. Counts I–III (**rights of publicity** and **privacy**) fail under the Transformative Use test, which is designed to strike the balance between the First Amendment and such claims.  Epic Games' alleged use of the "Signature Move" is a transformative use because*, assuming *arguendo* that Plaintiff's "Signature Move" is included in *Fortnite*, Epic Games "transformed" that move by including it in a highly creative fantasy video game in which emotes, like Phone It In, are performed by fanciful avatars that bear no resemblance to Plaintiff.

Counts IV–VIII (**unjust enrichment**, **unfair competition**, and **trademark** claims) fail pursuant to the widely-adopted *Rogers v. Grimaldi* test, which balances trademark and other legal rights with the public interest in free expression.  The *Rogers* test bars claims like those

Plaintiff has alleged in the context of expressive works unless a defendant's use has "no artistic relevance" to the underlying work or is "explicitly mislead[ing] as to the source or the content of the work." *Rogers v. Grimaldi*, 975 F.2d 994, 999 (2d Cir. 1989). Here, the Phone It In emote is artistically relevant to *Fortnite* as it allows users' avatars to celebrate in the game, as they might do in real life, by using what Plaintiff asserts is a culturally relevant and popular Move. Moreover, there can be no claim that *Fortnite* is explicitly misleading.

Epic Games respectfully requests that the Complaint be dismissed and, as no amendment to the Complaint can save Plaintiff's claims, it requests that the dismissal be with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that he created and owns rights to his "highly popular signature movements," which he allegedly performs "with his [baritone] saxophone." Compl. ¶ 1. It should be noted that Plaintiff does not clearly identify what comprises his claimed "Signature Move," and that the videos he references in the Complaint show Plaintiff performing a variety of different moves and sequences of moves, none of which resemble Phone It In. *See* Declaration of Dale M. Cendali, dated June 13, 2019, ("Cendali Decl.") Exs. A–E. For the purposes of this motion, however, it does not matter that Plaintiff has not identified his "Signature Move" or that none of his moves are the same as Phone It In, because Plaintiff's Complaint fails to state a claim for the reasons detailed above. As Plaintiff's failure to identify his "Signature Move" does not affect Epic Games' bases for dismissal, for convenience only and solely for the purposes of this Motion, Epic Games accepts Plaintiff's allegation that he has a "Signature Move" (the "Move").

Plaintiff alleges that Epic Games appropriated his alleged Move in its *Fortnite* video game. Compl. ¶ 1. In *Fortnite*, up to 100 players, alone, in pairs, or groups, compete to be the last player or group alive in a fantastical and fictional world. *Id.* ¶ 29. The game features an

extensive world in which players explore, build, and destroy, and also battle against each other
via player-to-player combat.  *See* Cendali Decl. Ex. F.  At the beginning of each round of
*Fortnite*'s battle royale, each player is dropped onto *Fortnite*'s sprawling map by a flying purple
school bus called the "Battle Bus" and floats down to earth with the help of a hang glider or a
large metal umbrella.  Once aground, the players' avatars explore the map's various areas—
which may include a megamall, a volcano, and floating sky platforms—while scavenging for
weapons and supplies, building fortifications, setting traps, and using launch pads to soar through
the air and move quickly from one location to another.  As the round progresses, the map shrinks
down in size due to an incoming storm, forcing the players to move closer together and
accelerating confrontations between them.  Players represent themselves in the game world with
avatars customized with various weapons and accessories.  *Fortnite*'s avatars are all fanciful,
make-believe characters: some have non-human features (such as a tomato head or animal head);
others are more human and follow certain fictional tropes (such as a gunslinger).  *Id.*  They do
not resemble Plaintiff, as is shown below:



*Fortnite* includes "emotes," which are "dances or movements" that an avatar performs to express
emotions in the game, such as celebrating a victory on the battlefield or taunting an opponent.
*Id.* ¶ 30.  There have been over 100 emotes.

    After *Fortnite's* release in 2017, Epic Games continued to make new content available
within the game as part of different "Seasons."  *Id.* ¶¶ 46, 54.  Plaintiff alleges that the "Phone It

In" emote—which Plaintiff alleges was not included as an option until Season 4—violates his rights. *Id.* ¶ 46; Cendali Decl. Ex. G.  Using Phone It In, an avatar plays a small alto saxophone while performing various movements with its feet and hips.

## III.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In reviewing the Complaint in the context of such a motion, the court "need not give credence to mere 'legal conclusions' couched as facts."  *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 503 (E.D. Pa. 2018).  Further, the court "may consider documents referenced in the complaint even if they are not attached." *Alvarez v. Ins. Co. of N. Am.*, No. 06 Civ. 4326, 2006 WL 3702641, at *1 n.2 (E.D. Pa. Dec. 12, 2006), *aff'd*, 313 F. App'x 465 (3d Cir. 2008); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts "must consider . . . documents incorporated into the complaint by reference" when ruling on 12(b)(6) motion); *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 280 n.4 (E.D. Pa. 2017) (holding that "a district court is permitted to consider the disputed works in deciding a Rule 12(b)(6) motion"), *aff'd,* 902 F.3d 165 (3d Cir. 2018)*.*

Courts routinely resolve the types of claims raised in this lawsuit on a motion to dismiss. *See e.g.*, *Hidden City Phila. v. ABC, Inc.*, No. 18 Civ. 65, 2019 WL 1003637, at *4–5 (E.D. Pa. Mar. 1, 2019) (Sánchez, J.) (granting motion to dismiss **trademark infringement** and **dilution** claims as barred by under *Rogers*);[1] *Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy*

---

[1]    *See also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (affirming grant of

*Homes, Inc.*, No. 16 Civ. 589, 2016 WL 7404559, at *7 (W.D. Pa. Dec. 22, 2016) ("[W]ell-

settled law within the Third Circuit provides that a court may dismiss a claim for **unfair**

**competition** [] that is preempted by federal law at [the motion to dismiss] stage.");[2] *Mitchell v.*

*Cartoon Network, Inc.*, No. 15 Civ. 5668, 2015 WL 12839135, at *3 & n.2 (D.N.J. Nov. 20,

2015) (granting motion to dismiss **right of publicity** claim on transformative use grounds, noting

that "the only pieces of evidence needed" were the defendants' work and the Plaintiff's

representation, and rejecting argument that dismissal would be "premature" as

transformativeness is a "determination that can be made by viewing the works in question");[3]

*Giordano v. Claudio*, 714 F. Supp. 2d 508, 532 (E.D. Pa. 2010) (Padova, J.) (finding **unjust**

**enrichment** claim preempted by the Copyright Act on motion to dismiss).[4]

---

motion to dismiss Lanham Act claims on *Rogers* grounds, holding that "the district court could conclude, having reviewed the versions of *Madden NFL* provided to the court," that the use was artistically relevant and that "[t]here is simply no allegation that [defendants] explicitly misled consumers"); *Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F. Supp. 3d 1249, 1267–70 (C.D. Cal. 2016) (granting motion to dismiss federal and state trademark infringement and dilution claims based on copyright preemption); *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014) (granting motion to dismiss Lanham Act false endorsement claim on preemption grounds because "[n]one of the allegations in the Complaint [] suffice to plead that Defendants' inclusion of Plaintiff 'explicitly misleads as to the source or content of the work'").

[2]  *See also Nicassio v. Viacom Int'l, Inc.*, 309 F. Supp. 3d 381, 396–97 (W.D. Pa. 2018) (granting motion to dismiss unfair competition claim on preemption grounds); *Lions Gate*, 170 F. Supp. 3d at 1266–70 (same); *Arsenal, Inc. v. Ammons*, No. 14 Civ. 1289, 2014 WL 6771673, at *4 (E.D. Pa. Dec. 2, 2014) (unfair competition claim dismissed).

[3]  *See also Cummings*, 67 F. Supp. 3d at 602–05 (granting motion to dismiss right of publicity claims on statutory and preemption grounds).

[4]  *See also Boring v. Google, Inc.*, 598 F. Supp. 2d 695, 703 (W.D. Pa. 2009) (granting motion to dismiss unjust enrichment claim), *aff'd*, 362 F. App'x 273, 282 (3d Cir. 2010); *Sullivan Assocs., Inc. v. Dellots, Inc.*, No. 97 Civ. 5457, 1997 WL 778976, at *3–4 (E.D. Pa. Dec. 17, 1997) (dismissing unjust enrichment claim as preempted on a Rule 12(b)(6) motion).

**IV.    ARGUMENT**

    **A.    All of Plaintiff's Claims Fail to State a Claim**

Plaintiff's right of publicity and privacy claims (Counts I–III) fail because the Move is not a protectable likeness under Pennsylvania right of publicity law and because Pennsylvania exempts "expressive work[s]" like *Fortnite* from liability.  Moreover, Plaintiff's unjust enrichment claim (Count IV) fails because Plaintiff has not and cannot allege a contractual relationship between himself and Epic Games.  Finally, Plaintiff's trademark claims (Counts VI–VIII) fail as Plaintiff has not alleged the existence of a valid trademark, as well as because Plaintiff does not and cannot allege that Epic Games has used his alleged trademark as a source identifier for Epic Games' own goods or services.

        1.    <u>Plaintiff's Right of Publicity and Privacy Claims Fail Because Plaintiff Cannot State a Claim</u>

Plaintiff's right of publicity and privacy claims (Counts I–III), based on the allegation that "Epic misappropriated Pellegrino's identity" through "its use of [the] Move as an in-game emote," Compl. ¶¶ 52, 64, 73, fail for two independent reasons.

***First***, the Move does not constitute the type of "likeness" protected by Pennsylvania law. Pennsylvania's statutory and common law rights of publicity and privacy protect against the unauthorized use of only a "name or likeness."  *See* 42 Pa. C.S.A. § 8316(a); *World Wrestling Fed'n Entm't Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 443–44 (W.D. Pa. 2003) (a defendant violates a plaintiff's common law right of publicity by "appropriating [plaintiff's] valuable name or likeness, without authorization"); *Worthy v. Carroll*, No. 02 Civ. 6882, 2003 WL 25706359, at *4 (E.D. Pa. July 16, 2003) (explaining that "the tort of misappropriation is defined as appropriating, for one's 'own use or benefit[,] the name or likeness of another" (quoting Restatement (Second) of Torts § 652C (1977))).  Plaintiff has not alleged use of his

name, and the "plain meaning of 'likeness' is 'appearance or semblance.'"  *Whole Enchilada,*

*Inc. v. Travelers Prop. Cas. Co.*, 581 F. Supp. 2d 677, 698 (W.D. Pa. 2008).  Thus, under

Pennsylvania law, to state a claim, Plaintiff must assert that Epic Games used his "actual

physical likeness."  *See id.*; *Maule*, 710 F. Supp. 2d at 517 ("[Plaintiff] must allege that

[defendant] used his name or his 'actual physical likeness' without his permission.").

Plaintiff, however, does not allege that Epic Games used his physical characteristics, or

that any of the *Fortnite* avatars resemble him in any way.  Plaintiff alleges only that Epic Games

copied the Move, which is not his "actual physical likeness" and is therefore not protected by

Pennsylvania law.  Compl. ¶¶ 52, 64, 73.  Moreover, nothing in Pennsylvania's right of publicity

statute or the case law interpreting Pennsylvania's statutory or common law rights of publicity or

privacy indicates that such rights extend beyond uses of personal, identifying characteristics—

like a person's appearance or voice—to uses of movements or dance steps.  *Cf.* 42 Pa. C.S.A. §

8316(e) (right of publicity limited to "any ***attribute*** of a natural person that ***serves to identify*** that

natural person" (emphasis added)).  As a result, Plaintiff's claims fail.

In addition to the Move being unprotectable under Pennsylvania law, Plaintiff's claims

fail because Phone It In is a generic depiction of a person with a saxophone performing basic

dance moves, and thus Phone It In does not reasonably identify Plaintiff as an individual person.

In an analogous right of publicity case, *Lohan v. Take-Two Interactive Software, Inc.*, the Court

of Appeals of New York affirmed the lower court's grant of a motion to dismiss where the use of

an avatar in a video game was "simply [] not recognizable as plaintiff," but was instead an

"ambiguous" and "generic" depiction of a "twenty something . . . modern, beach-going young

woman."  31 N.Y.3d 111, 122 (2018).  Here, Phone It In is even less "recognizable as" the

plaintiff than the avatar at issue in *Lohan*.  Although the avatar in that case shared the plaintiff's

"style," age, and general "look," *id.*, none of the avatars in *Fortnite* bear *any* physical resemblance to Plaintiff as they are all fanciful, make-believe characters (some of which are even non-human).  S*ee supra* 5.  The *only* alleged similarity between Plaintiff and *Fortnite* is a dance move that any of those avatars can perform.  As Plaintiff's allegation that Epic Games used the Move is plainly insufficient to support his claims, Counts I–III should be dismissed.

**Second**, Plaintiff's statutory right of publicity claim fails for the independent reason that *Fortnite* is an expressive work.  The Pennsylvania right of publicity statute protects against the use of a likeness when it is used for a "commercial or advertising purpose."  42 Pa. C.S.A. § 8316(a).  It, however, explicitly provides that the use of a name or likeness in an "expressive work"—which is further defined to include an "audiovisual . . . work regardless of the communications medium"—is not a use for a "commercial or advertising purpose" and is thereby exempted from the scope of the statute.  *Id.* at 8316(e).  Courts in this Circuit and others have made clear that video games are audiovisual works.  *See Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 967 (9th Cir. 1992) (video games are "audiovisual works"); *Midway Mfg. Co. v. Artic Int'l Inc.*, 704 F.2d 1009, 1012 (7th Cir. 1983) (same); *Midway Mfg. Co. v. Bandai-Am., Inc.*, 546 F. Supp. 125, 139 (D.N.J. 1982) (same); *cf. Brown*, 564 U.S. at 790.  This carve-out makes sense as the statute "focuses solely on the commercial-advertising context" and is "targeted at endorsements, not the full universe of creative works."  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1032 (3d Cir. 2008).[5]

---

[5]   Only works that are "used or employed for a commercial or advertising purpose" are subject to liability.  42 Pa. C.S.A. § 8316(e).  As other courts interpreting identical language in this context have held, a use for a "commercial or advertising purpose" exists only when a likeness is used to "directly promote [a] product or service."  *Tyne v. Time Warner Entm't*, 901 So. 2d 802, 806–10 (Fla. 2005); *see also Facenda*, 542 F.3d at 1032 ("Pennsylvania's right of publicity is meant to protect [] a citizen's prerogative not to have his or her name, likeness, voice, or identity used *in a commercial advertisement*." (emphasis added)).  By

As a highly creative video game, *Fortnite* is clearly an "expressive work" within the meaning of Pennsylvania's right of publicity statute. As a result, Plaintiff's statutory right of publicity claim necessarily fails.[6]

### 2. Plaintiff's Unjust Enrichment Claim Fails Because There is No Contractual Relationship Between the Parties

Plaintiff's unjust enrichment claim (Count IV) should be dismissed because, under Pennsylvania law, that claim cannot lie where "there [is] no relationship between the parties that could be construed as contractual," and where "[t]he entire thrust of [plaintiffs] allegations is that [defendants] took something from [plaintiffs] without their consent." *Boring*, 598 F. Supp. 2d at 703 (granting motion to dismiss unjust enrichment claim), *aff'd*, 362 F. App'x at 282 ("An unjust enrichment claim makes sense in cases involving a contract or quasi-contract, but not, as here, where plaintiffs are claiming damages for torts committed against them.").

---

contrast, when an alleged use is the content of an expressive work itself, there can be no right of publicity claim under the statute even if the expressive work itself is commercial. *Cf. Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996) (use of the plaintiff's name and likeness in the film "Panther" was not "for a commercial purpose" for the purposes of a common law right of publicity claim under Pennsylvania law, even though the film was made for a profit). An interpretation of the term "commercial or advertising purpose" to prohibit the use of a likeness in the body of any creative work that is offered for sale in any commercial marketplace would "raise[] . . . fundamental constitutional concern[s]." *Tyne*, 901 So. 2d at 808. "The fact that expressive materials are sold neither renders the speech unprotected, nor alters the level of protection under the First Amendment." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996) (internal citation omitted). Moreover, such a broad interpretation of the "commercial or advertising purpose" provision would effectively nullify the statute's exemption for expressive works, as most expressive works are sold or otherwise exploited commercially. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) ("[N]o man but a blockhead ever wrote, except for money." (quoting 3 Boswell's Life of Johnson 19 (G. Hill. ed. 1934))).

[6] The statute also provides that the use of a likeness in an "announcement for a commercial or advertising purpose for a[n expressive work]"—*i.e.*, to advertise or market an expressive work that itself uses a plaintiff's name or likeness—does not give rise to a cause of action. 42 Pa. C.S.A. § 8316(e)(2)(v). Even assuming, for the purposes of this Motion, that Epic Games "advertis[ed] the Phone It In emote to attract additional players . . . to play *Fortnite*," Compl. ¶ 54, such use of Plaintiff's likeness to advertise *Fortnite* would also be protected.

Here, Plaintiff has not alleged any relationship, much less a contractual relationship, between the parties.  Rather, he merely claims that Epic Games copied his Move without his consent.  That is insufficient under *Boring*.  Accordingly, Count IV should be dismissed.

### 3.   Plaintiff's Unfair Competition Claim Fails Because He and Epic Games are Not Competitors

Plaintiff's unfair competition claim (Count V) should also be dismissed because "[b]oth the Third Circuit and the District Courts have concluded that in order to state a claim for unfair competition, a plaintiff must allege that it is in competition with the defendant—that is, that the plaintiff and the defendant 'supply similar goods or services.'"  *Arsenal*, 2014 WL 6771673, at *4 (granting motion to dismiss unfair competition claim because a real estate developer and defendant supermarket operators were not competitors).  Here, Plaintiff has not and cannot allege that he and Epic Games are competitors because Plaintiff is a saxophone player and Epic Games is a video game publisher.  Accordingly, Count V should be dismissed.

### 4.   Plaintiff's Trademark Claims Fail As He Has Failed To Adequately Allege A Valid Trademark

Plaintiff's trademark claims (Counts VI–VIII) fail because Plaintiff has not and could not allege that his Move is a trademark.  Plaintiff alleges that his Move is his likeness and that by copying that likeness, Epic Games infringed his trademark.  Compl. ¶¶ 1 ("Epic has improperly exploited Pellegrino's protected and valuable likeness and trademark . . . by misappropriating Pellegrino's highly popular signature movements with his saxophone . . . ."), 86, 95 ("Through Epic's unauthorized use in *Fortnite* of Pellegrino's identifying mark, the Signature Move, Epic has misappropriated Pellegrino's trademark."), 96, 103.  But "as a general rule, a person's image or likeness cannot function as a trademark" unless the claimed mark is a particular *embodiment* of that person's likeness—*i.e.*, a famous photograph or image—that is "consistently used" as a source identifier for specific goods or services.  *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915,

922 (6th Cir. 2003); 2 *McCarthy on Trademarks and Unfair Competition* § 10:39 ("[T]here cannot be such an amorphous thing as a 'trademark' in a person's likeness."). This is because "it cannot be said that every [representation of a person's likeness] serves [the] origin-indicating function" that a mark must serve to qualify for protection as a trademark. *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990) (no trademark in likeness of Babe Ruth). Plaintiff's referenced videos show that he performs a variety of movements, and performs each movement in a variety of ways. He has not, in other words, consistently used one embodiment of his likeness as a mark to identify his goods or services. Plaintiff cannot claim that by improvising countless movements while performing with his saxophone, he has amassed a library of trademarked moves, the performance of which by anyone other than himself constitutes infringement and creates confusion as to the source of goods or services. Plaintiff has thus failed to allege ownership of a valid trademark and his trademark claims (Counts VI–VIII) fail for this reason alone. *ETW*, 332 F.2d at 923 (no valid trademark where the plaintiff "[did] not claim that a particular photograph of [Tiger Woods] has been consistently used on specific goods" but rather made "a sweeping claim to trademark rights in every photograph and image of Woods").

5.   Plaintiff's Dilution Claim Fails As Plaintiff Does Not Allege Trademark Use By Epic Games

Dilution law requires that a plaintiff establish that the defendant has used the alleged mark as its *own* trademark, *i.e.*, to identify the source of defendant's goods or services. 4 *McCarthy on Trademarks and Unfair Competition* § 24:122 ("The [federal dilution] statute makes it clear that a nontrademark and nontrade name use of the accused designation cannot dilute." (citing 15 U.S.C. § 1125(c))). Plaintiff has not and could not allege that Epic Games has used his alleged mark to identify the source of Epic Games' *own* goods or services—that is, to identify the source of *Fortnite*. Therefore, Plaintiff's trademark dilution claim (Count VIII) fails

13

to meet this statutory requirement and should be dismissed for this reason as well.  *Lions Gate*,

170 F. Supp. 3d at 1270 (granting motion to dismiss dilution claim as defendants did not use "the

allegedly famous mark as Defendants' own mark or to identify Defendants' services"); *see also*

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012)

(dismissing dilution claim because "[counterclaim defendant] did not 'use' Ford's marks . . . in

identifying or distinguishing its own goods or services"); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F.

Supp. 2d 463, 524 (S.D.N.Y. 2008) (dismissing dilution claim because "[defendant] has *not* used

the Tiffany mark to identify *its own* goods and services"), *aff'd*, 600 F.3d 93 (2d Cir. 2010).

### B.      Several of Plaintiff's Claims Are Preempted by the Copyright Act

Plaintiff's right of publicity and privacy (Counts I–III), unjust enrichment (Count IV),

unfair competition (Count V), and trademark infringement (Count VI–VII) claims are preempted

by the Copyright Act, and also should be dismissed for this reason.  The Copyright Act provides

the exclusive remedy for "all legal or equitable rights that are equivalent to any of the exclusive

rights within the general scope of copyright."  17 U.S.C. § 301(a).  Tellingly, however, Plaintiff

did not include a copyright infringement claim in this lawsuit, likely as he is aware that such a

claim would be unsuccessful.[7]  U.S. Copyright Office, Compendium of U.S. Copyright Office

---

[7]   This lawsuit is just one of many lawsuits that Plaintiff's counsel have filed on behalf of different plaintiffs accusing Epic Games and another video game maker, Take-Two Interactive Software, Inc. ("Take-Two"), of infringing alleged copyrights in dance steps or simple routines and violating right of publicity, trademark, and unfair competition laws.  *See Ferguson v. Epic Games, Inc.*, No. 2:18 Civ. 10110 (C.D. Cal, filed Dec. 5, 2018); *Redd v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal. filed Dec. 17, 2018); *Ribeiro v. Epic Games, Inc.*, No. 2:18 Civ. 10412  (C.D. Cal. filed Dec. 17, 2018); *McCumbers v. Epic Games, Inc.*, No. 2:19 Civ. 00260 (C.D. Cal., filed Jan. 11, 2019); *Baker v. Epic Games, Inc.*, No. 2:19 Civ. 00505 (C.D. Cal., filed Jan. 23, 2019); *Ferguson v. Take-Two*, No. 2:18 Civ. 10425 (C.D. Cal., filed Dec. 17, 2018), *Redd v. Take-Two*, No. 2:18 Civ. 10441 (C.D. Cal., filed Dec. 17, 2018); *Ribeiro v. Take-Two*, No. 2:18 Civ. 10417 (C.D. Cal., filed Dec. 17, 2018).  Plaintiff's counsel dismissed those lawsuits without filing a single brief in response to Epic Games' or Take-Two's motions to dismiss.  Plaintiff's counsel also joined as co-counsel

Practice § 805.1 (3d ed. 2017) (individual steps and simple routines not copyrightable).  Instead,

he attempts to argue that he owns trademark and other state law rights to the Move.  In addition

to failing to state a claim under those laws, *see supra* 8–14, his claims are preempted.

As this Court has noted, a claim is expressly preempted by the Copyright Act if (1) "the

work is the appropriate subject matter of a copyright" and (2) the claim "creates rights equivalent

to the exclusive rights protected by the Copyright Act."  *Giordano*, 714 F. Supp. 2d at 531.  **As to**

**the first prong**, all of Plaintiff's claims are predicated on the copying of the Move.  *See* Compl.

¶¶ 52, 63, 73, 76, 79, 85, 95.  As choreography is within the subject matter of copyright, 17

U.S.C. § 102(a)(4), the first prong is satisfied.  *Giordano*, 714 F. Supp. 2d at 531 (first prong

satisfied by a work within the scope of 17 U.S.C. § 102(a)).  Although Plaintiff carefully avoided

referring to his Move as a "dance" in an apparent attempt to avoid preemption, he admits that it

is a "dance" by referring to Phone It In as an "in-game dance" that is equivalent to his Move.

Compl. ¶ 4 ("This in-game dance was immediately recognized . . . as Leo P's Signature Move.").

In any case, it is immaterial whether or not the Move qualifies as a copyrightable

choreographic work.  As this Court has acknowledged, "the scope of the Copyright Act's subject

matter is broader than the scope of the Act's protections."  *Giordano*, 714 F. Supp. 2d at 532.

Courts routinely have held that even elements of works that entirely lack protection under the

Copyright Act fall "within the scope of the 'subject-matter of copyright'" for the purposes of

preemption analysis and thereby satisfy the first prong.  *United States ex rel. Berge v. Bd. of*

*Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463–65 (4th Cir. 1997).[8]  Thus, even if the Move

---

in a similar suit filed in the District of Maryland.  *See Brantley v. Epic Games, Inc.*, No. 8:19
Civ. 00594 (D. Md., filed Feb. 25, 2019).  Epic Games recently filed a motion to dismiss that
case on similar grounds.  *Id.* Dkt. No. 27.

[8]   *See also Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (work
"need not consist entirely of copyrightable material" to "meet the subject matter requirement,

is not copyrightable, it satisfies the first prong.  *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 850 (2d Cir. 1997) ("[The] subject matter of copyright includes all works of a type covered by sections 102 and 103, even if federal law does not afford protection to them." (citation omitted)).  Indeed, like Plaintiff here, the plaintiff in *Lions Gate* asserted unfair competition and trademark claims **based on the use of the famous lift** from the film *Dirty Dancing* where Patrick Swayze lifts Jennifer Grey over his head.  170 F. Supp. 3d at 1254.  The claims were preempted because the lift was the subject matter of copyright.  *Id.* at 1264.[9]

Moreover, Plaintiff alleges that Epic Games "created the Phone It In emote by capturing and digitally copying [Plaintiff] executing the . . . Move."  Compl. ¶ 51.  As "audiovisual works," the videos referenced in the Complaint are within the subject matter of copyright, providing an independent basis to satisfy the first prong.  17 U.S.C. § 102(a)(6); *Sims v. Viacom, Inc.*, No. 09 Civ. 3521, 2009 WL 3856667, at *4 (E.D. Pa. Nov. 17, 2009) (first prong satisfied as plaintiffs' work, "whether considered a literary work . . . or an audiovisual work (as embodied in the television series), f[ell] within the subject matter of the Copyright Act").

**As to the second prong**, the question is whether Plaintiff's claims include an "extra element" that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim."  *Giordano*, 714 F. Supp. 2d at 531.  Here, no extra element makes Plaintiff's claims different from a copyright claim as the allegedly infringing acts are described as the quintessential act of copyright infringement: "copying."  Compl. ¶¶ 34, 76, 79,

---

but instead need only fit into one of the copyrightable categories in a broad sense"); *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 633, 637 (6th Cir. 2001) (state law claims based on use of "a phrase or slogan not worthy of copyright protection" preempted), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

[9]   That Plaintiff did not include a copyright infringement claim in his lawsuit is irrelevant to the question of whether his claims are preempted.  *Giordano*, 714 F. Supp. 2d at 532 (state law claim preempted even though copyright infringement was not alleged).

85, 95; *see also id.* ¶¶ 51, 63 ("Epic created the Phone It In emote by capturing and *digitally copying* Pellegrino executing the Signature Move." (emphasis added)).  Accordingly, such claims, whether based on rights of publicity or privacy, unfair competition, trademark infringement or unjust enrichment law are preempted.[10]  *See Nicassio*, 309 F. Supp. 3d at 396–97 (granting motion to dismiss state law unfair competition claim on preemption grounds because "the crux of [plaintiff's] case is that Defendants' work [] copied her work [] without her permission"); *Giordano*, 714 F. Supp. 2d at 532 (unjust enrichment claim preempted because it was "functionally equivalent to a copyright claim"); *see also Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 642–43 (S.D.N.Y. 2017) (common law unfair competition claim preempted because "to survive preemption, the plaintiff must allege that the confusion forming the basis for the unfair competition claim was created by some act *other than copying*" (emphasis added)).[11]

---

[10]   Plaintiff's right of publicity claims stand in stark contrast to the claims that were found not to be preempted in *Facenda v. NFL Films, Inc.*  542 F.3d 1007, 1017, 1029 (3d Cir. 2008).  There, the court found no preemption because the statute required that the plaintiff's voice have "commercial value," and the voice was used "for the purposes of trade" in the form of an "infomercial" advertisement.  *Id.*  In so doing, the Third Circuit adopted the *Nimmer on Copyright* treatise's two-part framework for determining whether preemption exists: distinguishing right of publicity claims against works "for the purposes of trade," which may not be preempted, from claims against "expressive works," which are preempted.  *Id.* at 1029, 1032 (explaining that the Third Circuit believed "that *Laws* [*v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006)] was rightly decided").  Subsequent courts have acknowledged the Third Circuit's adoption of this dichotomy.  *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 n.10 (9th Cir. 2017) ("The Third Circuit also 'emphasize[d] that courts must circumscribe the right of publicity so that musicians, actors, and other voice artists do not get a right that extends beyond commercial advertisements to other works of artistic expression.'"); *Dryer v. Nat'l Football League*, 55 F. Supp. 3d 1181, 1201–02 (D. Minn. 2014) (finding that the works at issue were not advertising and thus plaintiffs' publicity-rights claims were preempted), *aff'd*, 814 F.3d 938 (8th Cir. 2016).  Here, Plaintiff's claims squarely fall into the latter category as *Fortnite* is an expressive, audiovisual work.

[11]   *See also Maloney*, 853 F.3d at 1019–20 (affirming dismissal of preempted common law publicity claim where photographic depictions of NCAA players were expressive works); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 658–59 (5th Cir. 2017) (affirming preemption of unfair competition claim); *Dryer v. Nat'l Football League*, 814 F.3d 938, 943 (8th Cir. 2016) (publicity claim preempted where footage of NFL players was "expressive,

The "Supreme Court has extended this principle of copyright preemption to the Lanham

Act and federal trademark protection." *Lions Gate*, 170 F. Supp. 3d at 1264 (citing *Dastar Corp.*

*v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–38 (2003)). Plaintiff's federal trademark

claim (Count VI) is based on the "unauthorized use of the . . . Move," Compl. ¶ 85, which

Plaintiff alleges was copied to "create the false impression that Epic created" the Move. *Id.* ¶ 47.

The Supreme Court, however, has held that the Lanham Act's phrase "origin of goods" "refers to

the producer of the tangible goods that are offered for sale, and not to the author of any idea,

concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37. This

interpretation was "intended to distinguish" Copyright Act claims—which govern the exclusive

rights to the expressive content embodied in goods—from Lanham Act claims—which police

confusion regarding the source of physical goods. *Quadratec, Inc. v. Turn 5, Inc.*, No. 13 Civ.

6384, 2015 WL 4876314, at *9 (E.D. Pa. Aug. 13, 2015) (noting that "the Lanham Act does not

protect 'originality or creativity,' nor does it 'creat[e] a cause of action for . . . plagiarism'"

(quoting *Dastar*, 539 U.S. at 37)). Thus, when a "claim is more accurately conceived of as

attacking unauthorized copying," courts routinely dismiss such claims. *Slep-Tone Entm't Corp.*

*v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (affirming

dismissal of Lanham Act claim); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d

1137, 1144 (9th Cir. 2008) (same); *Quadratec*, 2015 WL 4876314, at *9 (dismissing Lanham

---

rather than commercial, speech"); *Kitchen & Bath*, 2016 WL 7404559, at *7 ("[W]ell-settled
law in the Third Circuit provides that a court may dismiss a claim for unfair competition that
is preempted by federal law at [the motion to dismiss] stage."); *Lions Gate*, 170 F. Supp. 3d
at 1267 (common law trademark claim preempted); *Raucci v. Candy & Toy Factory*, 145 F.
Supp. 3d 440, 452–53 (E.D. Pa. 2015) (unjust enrichment claim held preempted on motion to
dismiss); *Info. Handling Servs., Inc. v. LRP Publ'ns, Inc.*, No. 00 Civ. 1859, 2000 WL
433998, at *2 (E.D. Pa. Apr. 18, 2000) (state law unfair competition claim preempted
because it was "really [a] claim[] for unauthorized copying").

Act claim as barred by *Dastar* where plaintiff alleged that defendant used plaintiff's works without authorization); *Brooks Grp. & Assocs. v. LeVigne*, No. 12 Civ. 2922, 2014 WL 1490529, at *12 (E.D. Pa. Apr. 15, 2014) (same); *Maule*, 710 F. Supp. 2d at 518 (same).[12]

Further, in addition to being expressly preempted by the Copyright Act, *Dastar* also bars Plaintiff's state law trademark infringement and unfair competition claims because "[a]lthough *Dastar* construed the Lanham Act, it is well recognized that the standards for Section 43(a) claims of the Lanham Act and unfair competition claims . . . are almost indistinguishable." *Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*, No. 16 Civ. 6109, 2017 WL 3917040, at *4–5 (S.D.N.Y. Sept. 5, 2017) (granting motion to dismiss state unfair competition claim alongside Lanham Act claim as barred by *Dastar*); *Dille Family Tr. v. Nowlan Family Tr.*, No. 15 Civ. 6231, 2016 WL 7202073, at *1 (E.D. Pa. Apr. 21, 2016) (dismissing "common law trademark infringement and unfair competition claim" as barred by *Dastar*); *TV One LLC v. BET Networks*, No. 11 Civ. 08983, 2012 WL 13012674, at *9 (C.D. Cal. Apr. 2, 2012) (granting motion to dismiss state law unfair competition claim as barred by *Dastar*, noting that "[w]hile *Dastar* addressed only a Lanham Act claim, the same standard applies to [plaintiff's state law unfair competition] claim").  Accordingly, Counts I–VII should be dismissed.

### C.    All of Plaintiff's Claims Are Barred By The First Amendment

Plaintiff's claims also should be dismissed as they fail under First Amendment analysis.

---

[12]    Similar false association or false endorsement claims also are barred by *Dastar*.  *See e.g.*, *Rudovsky v. West Pub. Corp.*, No. 09 Civ. 00727, 2010 WL 2804844, at *1–2 (E.D. Pa. July 15, 2010) ("The claims under the Lanham Act, for false advertising and false endorsement, are precluded by the Supreme Court's decision in *Dastar*"); *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 229 (3d Cir. 2017) (false association claim barred by *Dastar*); *Romantics v. Activision Pub., Inc.*, 532 F. Supp. 2d 884, 889 (E.D. Mich. 2008) (false endorsement claim barred by *Dastar*); *Lions Gate*, 170 F. Supp. 3d at 1266 (false association and unfair competition claims predicated on use of a "dance lift" barred by *Dastar* as "[f]alse association . . . is the same claim as that of false designation of origin").

    1.    <u>Plaintiff's Right of Publicity and Privacy Claims Fail Under the Transformative Use Test</u>

Plaintiff's right of publicity and privacy claims (Counts I–III) must give way to the First Amendment under the Transformative Use test, which the Third Circuit has adopted for balancing First Amendment interests against right of publicity claims. *See Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 165 (3d Cir. 2013); *see also Mitchell*, 2015 WL 12839135, at *4–5. Under the Transformative Use test, a right of publicity claim does not lie where a "celebrity likeness is one of the 'raw materials' from which an original work is synthesized" and where the "product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness." *Hart*, 717 F.3d at 160. To apply the test, courts determine "whether the defendant's use of a plaintiff's likeness consists of merely a copy or imitation of the plaintiff or whether the defendant adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Mitchell*, 2015 WL 12839135, at *4. When the defendant's work "contain[s] significant expressive content other than [a plaintiff's] mere likeness[]," the use is sufficiently transformative to merit First Amendment protection. *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 59 (2006).[13]

The *Mitchell* decision is particularly instructive. In that case, the plaintiff—a "well-known figure in the video gaming community"—alleged that the defendants used his likeness in an animated television series to create a character named Garrett Bobby Ferguson ("GBF"), who appeared in the series as a "giant floating head from outer space." 2015 WL 12839135, at *1. The plaintiff pointed to several similarities between himself and the GBF character: both had

---

[13]   When applying the Transformative Use test, Third Circuit courts frequently look to cases from California (where the test originated) for guidance. *See, e.g., Hart*, 717 F.3d at 160–70 (citing multiple California cases applying the test); *Mitchell*, 2015 WL 12839135, at *4–5 (same); *World Wrestling*, 280 F. Supp. 2d at 444–45 (same).

"long black hair and a beard," both shared a "similar backstory," both "held records at video games," and both were "portrayed as arrogant yet successful, beloved by fans, and willing to go to great lengths to maintain their titles." *Id.* at *5. Nevertheless, the court held that the "less-than-subtle evocation of Plaintiff" in defendants' television show was a transformative use because, even if the defendants had used the plaintiff's identity, (a) defendants' GBF character was "not a literal representation of [plaintiff]" as it "[did] not match the Plaintiff in appearance;" and (b) defendants' GBF character did not "do[] exactly what Plaintiff does in real life," but rather "[came] from a different planet, [played] a different game, [held] a different record, and [used] different methods to secure his high score." *Id.* at *5–6 (granting motion to dismiss).

*Kirby* also is instructive. *Kirby*—the lead singer in the band "Deee-Lite"—alleged that her likeness had been used in Sega's *Space Channel 5* video game to create a character named Ulala. 144 Cal. App. 4th at 51. She asserted that her likeness had been used because (a) she and Ulala shared similar physical features, (b) "Ulala's name is a phonetic variant of 'ooh la la,' a phrase often used by Kirby and associated with Kirby," and (c) "both Kirby and Ulala used the phrases 'groove,' 'meow,' 'dee-lish,' and 'I won't give up.'" *Id.* at 56. The court held that such use was transformative as, even if Sega had used Kirby's identity, (a) Ulala did not "merely emulate[] Kirby" given the differences between the plaintiff's physical characteristics and Ulala's such as their size, physique, hairstyle, costumes, and outfits; and (b) in the "setting for the game," Ulala was "a space-age reporter in the 25th century," and Kirby was not. *Id.* at 59.

Here, the transformative use is even clearer than in *Mitchell* and *Kirby* for several reasons. First, in both *Mitchell* and *Kirby*, the defendants' use of the plaintiffs' likenesses actually resembled the plaintiffs as those uses incorporated various physical characteristics that evoked a connection to the plaintiffs. Here, however, Plaintiff's argument that Epic Games used

21

his likeness rests entirely on a dance step:  Plaintiff does not allege *any* similarities in physical characteristics between Plaintiff and any *Fortnite* avatar.  This is because none of *Fortnite's* myriad fanciful avatars resemble Plaintiff as he is depicted in the various videos referenced in the Complaint.  *See* Cendali Decl. Exs. A–E.  Accordingly, *Fortnite* does not contain a "literal depiction" of Plaintiff, but rather "added creative elements to create a new expression."  *See Kirby*, 144 Cal. App. 4th at 59.  This alone makes any alleged use of the Move transformative. *See id.*; *see also World Wrestling*, 280 F. Supp. 2d at 445 (holding that defendant's graphics were transformative because they were not "literal depictions" of plaintiff's wrestling characters); *Mitchell*, 2015 WL 12839135 at *5 (character who resembled plaintiff but did "not match the Plaintiff in appearance" was transformative use); *Sivero v. Twentieth Century Fox Film Corp.*, No. B266469, 2018 WL 833696, at *10 (Cal. Ct. App. Feb. 13, 2018) ("Simpsonized" character with "some of the same physical characteristics" as plaintiff was transformative use).

Moreover, just as the GBF character in *Mitchell* did not "do[] exactly what [the plaintiff] does in real life," 2015 WL 12839135, at *5, and just as the Ulala character in *Kirby* was not a space-age reporter, 144 Cal. App. 4th at 60, Plaintiff has not asserted that he has appeared in a similar setting to *Fortnite*—namely he has not fought in a battle royale using weapons to eliminate opponents.  Compl. ¶ 29.  This also makes Epic Games' use transformative.  *See Kirby*, 144 Cal. App. 4th at 59 (use transformative as "setting for [defendants'] game" was "unlike any public depiction" of the plaintiff); *see also Hart*, 717 F.3d at 161 (use of a likeness alongside "fanciful characters, placed amidst a fanciful setting" would be "highly transformative"); *compare Mitchell*, 2015 WL 12839135, at *5 (character who resembled plaintiff but whose story did not "exactly track Plaintiff's biographical details" was transformative use) *with Hart*, 717 F.3d at 166 (use not transformative because "[t]he digital Ryan Hart does what the actual Ryan

Hart did while at Rutgers: he plays college football, in digital recreations of college football stadiums, filled with all the trappings of a college football game").[14]

The Phone It In emote also is a miniscule part of *Fortnite*.  *See supra* 4.  Phone It In is one of over one hundred emotes and has a limited role in overall gameplay as players are not required to perform emotes in the game. This further supports a finding of transformativeness. *Mitchell*, 2015 WL 12839135, at *6 (use of a likeness that was "placed in a larger story arc which is itself quite expressive" was transformative); *de Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 863–64 (Cal. Ct. App. 2018) (realistic depiction of plaintiff was transformative because it constituted only "4.2 percent" of the defendant's work); *Sivero*, 2018 WL 833696, at *10 (use of plaintiff's likeness was transformative in part because defendants' character was "a minor character in the overall constellation of Simpsons characters").

Finally, Plaintiff concedes that *Fortnite* became a popular video game long before the inclusion of Phone It In, and thus that the game's value comes from Epic Games' creativity, skill, and reputation.  Compl. ¶¶ 28 ("On or around July 2017, Epic released the initial version of *Fortnite* . . . ."), 37 ("Soon after its release, *Fortnite* became an international phenomenon."), 40 ("On December 3, 2018, *Fortnite* released the 'Phone It In' emote . . ..").  This too shows transformative use.  *See Hart*, 717 F.3d at 159 n.24 (a work is transformative where the "marketability and economic value of the challenged work [does not] derive *primarily* from the fame of the celebrity depicted" (emphasis added)); *de Havilland*, 21 Cal. App. 5th at 864

---

[14]   The Third Circuit in *Hart* ultimately rejected the defendants' First Amendment defense under the Transformative Use test because the video game avatar at issue bore a close physical resemblance to the plaintiff, and did in the video game what the actual plaintiff did during his career: "he play[ed] college football, in digital recreations of college football stadiums."  *Id.* at 166.  Because *Fortnite* does not contain a "literal depiction" of Plaintiff and Phone It In appears in the context of a fanciful video game no part of which bears any resemblance to Plaintiff or his life, *Hart* is inapposite.  *Id.* at 161; *see supra* 5.

(transformative use shown by successfulness of series' "screenwriter, director, and producer;" "[a]ccomplished writers;" and "[h]ighly-regarded and award-winning actors"); *Sivero*, 2018 WL 833696, at \*10 (transformative use as "success of *The Simpsons*" does not derive "primarily from Sivero's fame").  Thus, the right of publicity claims (Counts I–III) should be dismissed.[15]

        2.    The *Rogers* Test Bars Plaintiff's Unjust Enrichment, Unfair Competition, and Trademark Claims

In *Rogers v. Grimaldi*, the Second Circuit held that trademark claims are barred by the First Amendment unless a defendant's alleged use (1) has "no artistic relevance" to the underlying work or (2) is "explicitly mislead[ing] as to the source or the content of the work." 875 F.2d 994, 999 (2d Cir. 1989); *see Hidden City Phila.*, 2019 WL 1003637 at \*3–5 (applying *Rogers* to trademark and dilution claims arising out of ABC's use of the name "Hidden Philadelphia" as the title of its videos about rare, historic locations in Philadelphia); *Seale*, 949 F. Supp. at 340 (applying *Rogers* to use of plaintiff's name and likeness in the film "Panther").[16] The *Rogers* test has been adopted by courts across the country, which have applied it to the content of expressive works, including video games, to find that free speech principles outweighed the plaintiffs' alleged rights.  *See e.g.*, *Brown v. Elec. Arts, Inc.*, 724 F.3d at 1248 (affirming dismissal under *Rogers* of Lanham Act unfair competition claim based on the use of a football player's likeness in a video game); *Dillinger v. Elec. Arts Inc.*, No. 1:09 Civ. 1236, 2011 WL 2457678, at \*3–8 (S.D. Ind. June 16, 2011) (dismissing under *Rogers* Lanham Act and

---

[15]   Satisfaction of the Transformative Use test also requires dismissal of Plaintiff's unfair competition claim.  *Kirby*, 144 Cal. App. 4th 47, 61.

[16]   *See also Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1197–1200 (9th Cir. 2017) (affirming dismissal of trademark infringement, dilution, and unfair competition claims on *Rogers* grounds); *Roxbury Entm't v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170, 1174 n.7 (C.D. Cal. 2009) (dismissing unjust enrichment claim under *Rogers* where claim rested on substance of trademark claims).

common law unfair competition claims); *see also* 6 *McCarthy on Trademarks and Unfair Competition* § 31:144.50 (5th ed.) (*Rogers* test is "widely used" to balance "rights between the free speech policy of the First Amendment and the Lanham Act policy of preventing deception and confusion").[17]  The *Rogers* test "applies equally to [] state law claims" as well as federal claims.  *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008); *see also Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1991); *Sporting Times, LLC v. Orion Pictures, Corp.*, 291 F. Supp. 3d 817, 828 (W.D. Ky. 2017).

**As to the first prong**, only the use of a source identifier with "no artistic relevance to the underlying work whatsoever" can survive First Amendment scrutiny.  *Rogers*, 875 F.2d at 999. In other words, whether the use is artistically relevant is a "'low threshold of minimal artistic relevance."  *Hidden City Phila.*, 2019 WL 1003637, at *4; *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (noting that the "threshold for 'artistic relevance' is purposely low" and "merely must be above zero" to meet the first *Rogers* prong).  "This black-and-white rule has the benefit of limiting [courts'] need to engage in artistic analysis in this context."  *Brown*, 724 F.3d at 1243.

Here, emotes, including the Phone It In emote, are artistically relevant to *Fortnite* because they directly enhance users' gameplay experience by allowing them to express emotions within the game by using dance moves influenced by popular culture.  *See, e.g., Novalogic v.*

---

[17]  The Supreme Court's decision in *Brown* (published three years after the Third Circuit's decision in *Facenda*) eliminated any doubt that video games, like *Fortnite*, are indistinguishable from other expressive works like "books, plays, and movies" for the purposes of First Amendment analysis.  564 U.S. at 790.  Although the Third Circuit in *Facenda* declined to apply *Rogers* to a right of publicity claim based on the use of a voice in an ***advertisement***, its holding was based on the conclusion that the defendant's work "aims to promote another creative work" and was thus "commercial speech" and not "artistic expression."  542 F.3d at 1017–18.  As *Fortnite* is an expressive work, not an advertisement, *Rogers* should be applied to Plaintiff's trademark claims.

*Activision Blizzard*, 41 F. Supp. 3d 885, 900–01 (C.D. Cal. 2013) (use in video game artistically relevant because it added "to the enjoyment users receive from playing the complicated game"); *Louis Vuitton*, 868 F. Supp. 2d at 178 (use of fake Louis Vuitton bag in film was "artistically relevant" because one of the characters' mispronunciation of "Louis Vuitton" "comes across as funny").  Plaintiff himself alleges that his move is a "famous" and "highly popular" dance move. Compl. ¶¶ 1, 85.  Moreover, Plaintiff admits Phone It In's artistic relevance by acknowledging that "'emotes' (dances or movements)" are an essential feature of the game.  Compl. ¶ 30.  In fact, Plaintiff even alleges emotes are "fundamental to *Fortnite*'s success."  *Id*. at ¶¶ 30, 33. Plaintiff also admits that *Fortnite*'s inclusion of emotes has become a part of the zeitgeist with professional athletes, young adults, teenagers, and kids "executing emotes" in real life.  *Id*. at ¶ 33.  Thus, Epic Games' alleged inclusion of the Move and other culturally-relevant dance steps in *Fortnite* enable players to celebrate on the battlefield by performing the same kinds of popular dances and movements in the game that they might perform in real life.  This is more than sufficient to qualify for First Amendment protection given that even a "tenuous" association satisfies the first prong.  *Roxbury Entm't*, 669 F. Supp. 2d at 1173 (use of ROUTE 66 mark in adult film was artistically relevant as the film's story line, "to the extent there is one," concerned a young couple on the run); *see also Hidden City Phila.*, 2019 WL 1003637, at *4 ("Hidden Philadelphia" title "easily me[t] the first element of the *Rogers* test" for videos about "rare, historic locations in Philadelphia . . . not commonly known to the general public").

**As to the second prong**, a work is protected by the First Amendment unless the use is "explicitly misleading as to the source or content of the work."  *Hidden City Phila.*, 2019 WL 1003637, at *4.  When analyzing the second *Rogers* prong, the defendant's work is not explicitly misleading "absent an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that causes

consumer confusion." *Id.*; *see also Dillinger*, 2011 WL 2457678, at *6 ("To be 'explicitly misleading,' the defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond mere use of plaintiff's name or other characteristic."). In other words, the "slight risk that [the] use of a celebrity's [name or likeness] might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression." *Rogers*, 875 F.2d at 1000.

In a closely analogous case, the Southern District of Indiana considered a Lanham Act and common law unfair competition claim based on the use of the DILLINGER mark on virtual weapons in a series of video games based on the *Godfather* movies. *Dillinger*, 2011 WL 2457678, at *2–3. In the video games, players had the option to "choose and use a Tommy Gun identified as the Level Three 'Dillinger Tommy Gun," which was "one of fifteen firearms in [the] game." *Id.* at *3. Players also had the option to buy, through in-game purchases, a "downloadable bundle of [add-on] weapons [that] include[d]" a separate virtual weapon labelled "Modern Dillinger." *Id.* After holding that the "attenuated" link between the Dillinger mark and the *Godfather* video games was sufficient to qualify as "artistic relevance," *id.* at *4–6, the court held that the video games were not "explicitly misleading" because the plaintiff had failed to "point[] to [an] *explicit* misrepresentation" in the defendant's work, which was "alone [] dispositive of [the] issue [of the second *Rogers* prong]." *Id.* at *7–8.

Here, as in *Dillinger*, Plaintiff alleges no misleading conduct by Epic Games other than use of the Move, nor could he as Epic Games does not represent that *Fortnite* is connected to Plaintiff. Moreover, Plaintiff admits that the Phone It In emote itself does not imply endorsement or sponsorship by Plaintiff. Compl. ¶ 41 (alleging that *Fortnite* players "believe[] the emote was Epic's original creation"). Further, the emote is only a tiny part of *Fortnite*, *see*

*supra* 4, which further militates against a finding that the game is explicitly misleading as to its source.  *See E.S.S.*, 547 F.3d at 1100 (that the inclusion of plaintiff's mark was "quite incidental to the overall story of the Game" supported the conclusion that the use was not explicitly misleading).  As *Fortnite's* Phone It In emote satisfies the *Rogers* test, dismissal of Counts IV through VIII is appropriate.  *See Brown*, 724 F.3d at 1247–48 (affirming grant of motion to dismiss); *E.S.S.*, 547 F.3d at 1100–01 (same); *Hidden City Philadelphia*, 2019 WL 1003637, at *5 (granting motion to dismiss); *Metrano v. Twentieth Century Fox Film Corp.*, No. 08 Civ. 086314, 2009 WL 10672576, at *5 (C.D. Cal. July 16, 2009) (granting motion to dismiss).

## V.    CONCLUSION

Epic Games respectfully requests that the Complaint be dismissed.  Moreover, as amendment of the Complaint would be futile, it requests that the dismissal be with prejudice. *See Tanksley*, 259 F. Supp. 3d at 304 n.14 (as "amendment will not cure the defects in the claims," it "would be futile and leave to amend will not be granted.").

DATED:  June 13, 2019

<div style="margin-left:45%;">

_/s/ Dale M. Cendali_
_____

Dale M. Cendali (admitted _pro hac vice_)
dale.cendali@kirkland.com
Joshua L. Simmons (admitted _pro hac vice_)
joshua.simmons@kirkland.com
Shanti Sadtler Conway (admitted _pro hac vice_)
shanti.conway@kirkland.com
Megan L. McKeown (admitted _pro hac vice_)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Patrick Loftus (PA60417)
loftus@duanemorris.com
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1367

_Attorneys for Defendant Epic Games, Inc._

</div>

29