IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


LEO PELLEGRINO                          :          CIVIL ACTION
                                        :
              v.                        :
                                        :
EPIC GAMES, INC.                        :          NO.  19-1806


## MEMORANDUM

**Padova, J.**                                          **March 31, 2020**

Plaintiff Leo Pellegrino commenced this action against Defendant Epic Games, Inc. ("Epic") asserting that Epic misappropriated his likeness and trademark, i.e., his "Signature Move."[1]  The Complaint asserts that Epic's misappropriation violated Pellegrino's right to publicity and infringed and diluted his trademark.  Epic has filed a Motion to Dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  We held a hearing on the Motion on March 3, 2020.  For the reasons that follow, we grant Epic's Motion in part and deny it in part.

## I.      BACKGROUND

The Complaint alleges that Leo Pellegrino "is a professional baritone saxophone player and member of the 'brass house' group 'Too Many Zooz.'"  (Compl. ¶ 2.)  Using his unique anatomy—specifically his externally rotatable feet—Pellegrino was able to create the Signature Move, a series of movements that express his own unique dancing style.  (Id. ¶ 17.)  Pellegrino incorporates and "executes the Signature Move [in] every one of his musical performances."  (Id. ¶ 24.)  By executing the Signature Move in concert and festival performances in front of hundreds

---

[1] Pellegrino's Signature Move is a series of dance moves executed while holding a saxophone.  Pellegrino attaches a video clip of his Signature Move as Exhibit 1 to the Complaint.

of thousands of people and in online videos with millions of views, his Signature Move has grown in popularity and has become inextricably linked to his identity.  (Id. ¶¶ 3, 24.)

Epic Games, Inc. is a video game developer who created the game "Fortnite Battle Royale." (Id. ¶¶ 10, 28.)  Fortnite was released in September 2017 and since then has become one of the most popular video games ever.  (Id. ¶ 7.)  In fact, because of Fortnite's success, Epic's value has grown from approximately $825 million to approximately $15 billion.  (Id. ¶ 38.)  Fortnite is a battle royale video game, a "genre that blends the survival, exploration and scavenging elements of a survival game with last-man-standing gameplay."  (Id. ¶ 28.)  In this format, "up to 100 players, alone, in pairs or in groups, compete to be the last player or group alive" by using weapons and other forms of violence to eliminate other players.  (Id. ¶ 29.)

Epic does not charge players money to purchase Fortnite; instead, players can download and play Fortnite for free.  (Id. ¶ 30.)  Fortnite generates revenue using its in-game electronic storefront where it sells virtual content that players can use while playing Fortnite.  (Id.)  This buyable virtual content includes customizations for the Fortnite digital avatars like "'emotes'" that enable the Fortnite avatars to perform dances or movements.  (Id.)

Epic creates these "emotes by copying and coding dances and movements directly from popular videos, movies, and television shows without consent."  (Id. ¶ 34.)  Emotes are popular among players because emotes allow players to personalize their Fortnite experience.  (Id. ¶ 33.)  Emotes have become popular even outside of Fortnite.  (Id.)  For example, professional athletes perform celebrations based on Fortnite emotes and other people post social media videos of themselves executing the emotes.  (Id.)

One of these emotes, the "'Phone It In'" emote, "is identical to Pellegrino's Signature Move."  (Id. ¶ 41.)  The name "'Phone It In'" is a reference "to Pellegrino's appearance in a Google

Pixel 2 phone commercial in 2017." (Id. ¶ 5.) Without Pellegrino's consent, Epic sells the Phone It In emote for 800 V-Bucks (Fortnite's virtual currency), which is worth approximately $8. (Id. ¶¶ 30, 40.) Once a player buys this emote and equips his or her avatar with it, "the player's avatar can execute the Signature Move during Fortnite gameplay." (Id. ¶ 41.) Many Fortnite players worldwide immediately recognized the Phone It In emote in Fortnite as Pellegrino's Signature Move. (Id.) Epic thus uses Pellegrino's Signature Move embodied in the Phone It In emote to create the false impression that Pellegrino is endorsing the game. (Id. ¶ 47.) Other players, however, have the false impression that the Phone It In emote was Epic's original creation because Epic does not credit Pellegrino as the Signature Move's creator and owner. (Id. ¶¶ 41, 47.)

The Complaint asserts eight causes of action under state and federal law. The first cause of action asserts a claim for unauthorized use of Pellegrino's name or likeness in violation of 42 Pa. Cons. Stat. Ann. § 8316. (Id. ¶¶ 50-60.) The second cause of action asserts a claim for misappropriation of publicity under Pennsylvania common law. (Id. ¶¶ 61-71.) The third cause of action asserts a claim for invasion of privacy by misappropriation of identity under Pennsylvania common law. (Id. ¶¶ 72-74.) The fourth cause of action asserts a claim for unjust enrichment under Pennsylvania common law for using Pellegrino's likeness and trademark. (Id. ¶¶ 75-77.) The fifth cause of action asserts a claim for unfair competition under Pennsylvania common law for using Pellegrino's likeness and trademark. (Id. ¶¶ 78-83.) The sixth cause of action asserts a claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a). (Id. ¶¶ 84-92.) The seventh cause of action asserts a claim for trademark infringement under Pennsylvania common

law.  (Id. ¶¶ 93-100.)  The eighth cause of action asserts a claim for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c).  (Id. ¶¶ 101-108.)[2]

## II.  LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

---

[2] For ease of reference, we will refer to each "cause of action" as a "Count."  For example, the first cause of action will be "Count I."

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555) (add'l citation omitted).

## III. DISCUSSION

Epic argues in its Motion that: (1) Counts I-III must be dismissed because the First Amendment protects Fortnite as an expressive work; (2) Counts IV-V must be dismissed because the Complaint fails to allege the essential elements of these claims; (3) Count VI is barred by the Supreme Court of the United States decision in Dastar Corporation. v. Twentieth Century Fox Film Corporation, 539 U.S. 23 (2003); (4) Count VII must be dismissed because it is preempted by the Copyright Act; and (5) Count VIII must be dismissed because the Complaint fails to allege an essential element of the claim.

### A. Right of Publicity and Privacy Claims (Counts I-III)

Pellegrino's right of publicity and privacy claims assert that Epic, by using Pellegrino's Signature Move in Fortnite, has misappropriated his likeness. Epic has moved to dismiss these claims on First Amendment grounds. As a preliminary matter, because Fortnite is a video game, the First Amendment protects it as an expressive work. See Hart v. Elec. Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013) ("[V]ideo games are protected as expressive speech under the First Amendment." (citing Brown v. Entm't Merchants Ass'n, 564 U.S. 786, 789 (2011))). Where a plaintiff alleges that an expressive work violates his right of publicity and privacy, we must determine whether the First Amendment protections afforded to the expressive work outweigh the

plaintiff's publicity and privacy rights.  <u>See</u> <u>id.</u> at 148-49.  If they do, we must dismiss the plaintiff's publicity and privacy claims.  <u>See</u> <u>id.</u> at 149-50.

In <u>Hart v. Electronic Arts, Incorporated</u>, the United States Court of Appeals for the Third Circuit directed that, in balancing First Amendment protections against publicity and privacy rights, we are to utilize the Transformative Use Test.  <u>Id.</u> at 165 (concluding that "the Transformative Use Test is the proper analytical framework to apply to cases" balancing the First Amendment and publicity rights).  Under the Transformative Use Test, the First Amendment protections enjoyed by an expressive work will outweigh a celebrity plaintiff's interests in his likeness if "'the product containing [the] celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness.'"  <u>Id.</u> at 160 (emphasis omitted) (quoting <u>Comedy III Prods., Inc. v. Gary Saderup, Inc.</u>, 21 P.3d 797, 809 (Cal. 2001)).

The Third Circuit applied the Transformative Use Test in <u>Hart</u> under circumstances similar to those in the case at hand.  In <u>Hart</u>, a college football player, Ryan Hart, brought suit against the video game developer Electronic Arts ("EA") for violating his right of publicity by using his likeness in EA's NCAA Football series of videogames.  <u>Id.</u> at 147.  At issue was whether EA's use of Hart's likeness on a digital avatar in NCAA Football was sufficiently transformative such that the First Amendment barred Hart's right of publicity claim.  <u>Id.</u> at 165.  To make this determination, the Third Circuit conducted two central inquiries.  It first considered whether Hart's "identity" was sufficiently transformed and defined "identity" as encompassing both Hart's appearance and his biographical information.  <u>Id.</u> at 165-66.  The Third Circuit thus analyzed how closely the digital avatar in NCAA Football embodying Hart's likeness "resemble[d] the genuine article."  <u>Id.</u>; <u>see also</u> <u>Mitchell v. Cartoon Network, Inc.</u>, Civ. A. No. 15-5668, 2015 WL 12839135,

at *5 (D.N.J. Nov. 20, 2015) (comparing appearances of a television character and the plaintiff to determine whether the defendant's use of the plaintiff's likeness was transformative); see also Kirby v. Sega of Am., Inc., 50 Cal. Rptr. 3d 607, 616 (Cal. Ct. App. 2006) (comparing appearances of a video game avatar and the plaintiff to determine whether the defendant's use of the plaintiff's likeness was transformative).  The court then considered the manner in which Hart's identity was "incorporated into and transformed by" the expressive work.  Hart, 717 F.3d at 166 (quotation omitted).  Specifically, the Third Circuit looked at "the context within which the digital avatar exist[ed]," and asked whether the digital avatar that was alleged to possess Hart's likeness, did in the game what Hart did in real life.  Id.; see also Mitchell, 2015 WL 12839135, at *5 (concluding that the defendant's use of the plaintiff's likeness was sufficiently transformative where the defendant's television character did not do "exactly what [the] [p]laintiff [did] in real life").

In the instant case, Epic argues that its use of Pellegrino's likeness in Fortnite (allowing Fortnite avatars to be equipped with the Signature Move a.k.a. the Phone It In emote)[3] is so transformative that the likeness has become primarily Epic's own expression rather than Pellegrino's likeness.  Applying the test as articulated in Hart, we observe that the Complaint does not allege that the Fortnite avatars equipped with the Phone It In emote, i.e., Pellegrino's likeness, share Pellegrino's appearance or biographical information.  Indeed, the Complaint contains a picture of a Fortnite avatar equipped with the Phone It In emote, and the avatar does not bear a strong resemblance to Pellegrino.  (See Compl. ¶ 4 & Ex. 1.)  The Complaint also alleges that Fortnite players can customize their avatars with "new characters" and a variety of emotes mimicking celebrities other than Pellegrino.  (Id. ¶¶ 30, 35.)  The Complaint further alleges that

---

[3] The Complaint alleges that the "'Phone It In' emote is identical to Pellegrino's Signature Move."  (Compl. ¶ 41.)

the avatars fight in a battle royale and can execute emotes like Phone It In "while in the Fortnite Universe," amidst "us[ing] weapons and violence to eliminate the competition" (id. ¶¶ 4, 29), whereas Pellegrino is alleged to be a musical performer who executes his Signature Move at musical performances (see id. ¶¶ 18-24). These allegations establish that the avatars in Fortnite do not share Pellegrino's identity nor do what Pellegrino does in real life. We therefore conclude that Epic's use of Pellegrino's likeness is sufficiently transformative under the Transformative Use Test to provide it with First Amendment protections that are not outweighed by Pellegrino's interests in his likeness. Accordingly, we grant Epic's Motion to Dismiss as to Pellegrino's right to publicity and privacy claims asserted in Counts I-III, concluding that the First Amendment bars these claims.

B. Unjust Enrichment (Count IV)

Pellegrino's unjust enrichment claim asserts that Epic, by using Pellegrino's Signature Move in Fortnite, has been "unjustly enriched to the substantial detriment of Pellegrino." (Compl. ¶ 76.) Epic has moved to dismiss Pellegrino's unjust enrichment for failing to state a claim upon which relief can be granted. To plead a claim for unjust enrichment under Pennsylvania law, "a [complaint] must allege facts sufficient to establish 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Boring v. Google Inc., 362 F. App'x 273, 281 (3d Cir. 2010) (quoting Lackner v. Glosser, 892 A.2d 21, 34 (Pa. Super. Ct. 2006)).

Epic argues that the Complaint does not plausibly allege an unjust enrichment claim because it does not contain allegations of a relationship between the parties that can be construed as contractual, i.e., that there were benefits conferred on defendant *by plaintiff*. As Epic contends,

to plausibly allege an unjust enrichment claim, the Complaint must allege not just that Epic received a benefit unjustly, or that a benefit was unjustly conferred on Epic; rather, it must allege that *Pellegrino* directly conferred a benefit on Epic.  See Gabriel v. Giant Eagle, Inc., 124 F. Supp. 3d 550, 568 (W.D. Pa. 2015) (emphasizing that "'benefits conferred on defendant'" must be made "'***by Plaintiff***'" (quoting Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008))).  "Plaintiff's actions are core to the cause of action."  Id. at 569.  Indeed, the doctrine of unjust enrichment "'does not apply simply because the defendant may have benefitted as a result of the actions of the Plaintiff.'"  Id. (quoting Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664, 668-69 (2007)).

Here, the Complaint alleges that Epic "misappropriate[d] Pellegrino's likeness and the Signature Move" and that Pellegrino "d[id] not consent to or approve Epic's use of his likeness and the Signature Move for the Phone It In emote." (Compl. ¶¶ 47-48.)  Because Pellegrino alleges that Epic misappropriated his likeness without his permission, Pellegrino cannot have conferred anything on Epic.  Accord Hart v. Elec. Arts, Inc., 740 F. Supp. 2d 658, 670 (D.N.J. 2010) ("[B]ecause Plaintiff alleges in his . . . Complaint that Defendant did not seek his permission before using his likeness . . . , Plaintiff clearly did not confer any benefit upon Defendant.").  Indeed, "[t]he entire thrust of [Pellegrino's] allegations is that [Epic] *took* something from [Pellegrino] without [his] consent, and should be held liable for having done so.  There is, therefore, no basis for applying a quasi-contractual remedy [for unjust enrichment]."  Boring v. Google, Inc., 598 F. Supp. 2d 695, 703 (W.D. Pa. 2009), aff'd in part, rev'd in part on other grounds, 362 F. App'x 273 (3d Cir. 2010).  We therefore conclude that the Complaint fails to state a claim for unjust enrichment upon which relief can be granted.  Accordingly, we grant Epic's Motion to Dismiss as to Pellegrino's unjust enrichment claim in Count IV.

C. Unfair Competition (Count V)

Pellegrino's unfair competition claim asserts that Epic, by using Pellegrino's Signature Move in Fortnite, has misappropriated his likeness and trademark. Epic has moved to dismiss Pellegrino's unfair competition claim for failing to state a claim upon which relief can be granted. To plead a claim for unfair competition under Pennsylvania common law, "a [complaint] must allege that [the plaintiff] is in competition with the defendant—that is, that the plaintiff and the defendant 'supply similar goods or services.'" Am. Bd. of Internal Med. v. Von Muller, Civ. A. No. 10-2680, 2011 WL 857337, at *11 (E.D. Pa. Mar. 10, 2011) (quoting Giordano v. Claudio, 714 F. Supp. 2d 508, 523 (E.D. Pa. 2010)), aff'd, 540 F. App'x 103 (3d Cir. 2013).

Epic argues that Pellegrino's unfair competition claim should be dismissed because the Complaint does not allege that Epic and Pellegrino are in competition, i.e., that they supply similar goods or services. Specifically, Epic maintains that the Complaint alleges that Epic is a video game publisher and that Pellegrino is a saxophone player, and thus, the parties supply different goods. Indeed, the Complaint alleges that Pellegrino is a saxophone player, a member of "two brass-based musical groups" and performs music at musical performances. (Compl. ¶¶ 15-24.) In contrast, the Complaint alleges that Epic develops and sells video games. (Id. ¶¶ 26-28.) Based on these allegations, it is plain that the parties do not supply similar goods or services. Pellegrino nevertheless maintains that the parties are competitors "in the field of selling dance performances" because Epic sells emotes that are "virtual dance performances." (See Pl.'s Opp. Mem. at 32-33.) Pellegrino, however, provides no case law, and we are aware of no case law, that would support such a broad construction of "competitor." We therefore conclude that the Complaint does not plausibly allege that Epic and Pellegrino are competitors and thus, fails to state a claim for unfair

competition upon which relief can be granted. Accordingly, we grant Epic's Motion to Dismiss as to Pellegrino's unfair competition claim in Count V.

D. False Designation of Origin and False Endorsement (Count VI)

Pellegrino's Lanham Act claim asserts that Epic, by using Pellegrino's Signature Move in Fortnite, has misappropriated his likeness and trademark. Epic has moved to dismiss Pellegrino's Lanham Act claim as barred by the United States Supreme Court's decision in Dastar Corporation v. Twentieth Century Fox Film Corporation, 539 U.S. 23 (2003). As a preliminary matter, Pellegrino appears to bring his Lanham Act claim under two theories. Under the first theory, the Complaint asserts a Lanham Act claim for false designation of origin. This claim is based on allegations that Epic committed trademark infringement by using "the Signature Move . . . to create the false impression that Epic created [it]." (Compl. ¶ 47.) Under the second theory, the Complaint asserts a Lanham Act claim for false endorsement. This claim is based on allegations that "Epic used Pellegrino's . . . Signature Move to generate significant income by . . . creating the false impression that Pellegrino endorsed Fortnite." (Id. ¶ 86.)[4]

1. False Designation of Origin

A facially plausible false designation of origin claim under the Lanham Act requires allegations of fact that would establish that the defendant's use of the plaintiff's mark to identify its goods or services is "likely to create confusion concerning the *origin of the goods* or services." Flynn v. Health Advocate, Inc., 169 F. App'x 99, 100-01 (3d Cir. 2006) (emphasis added) (citing Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994)); see also 15 U.S.C. § 1125(a)(1)(A). The Supreme Court in Dastar analyzed the meaning of the phrase "origin

---

[4] Although the Complaint merely identifies Count VI as asserting "Trademark Infringement," the Complaint references the statute prohibiting false designation of origin and false endorsement. (See Compl. at 17.)

of goods" for purposes of the Lanham Act in order to distinguish between trademark claims that could be brought under the Lanham Act and claims that were governed exclusively by the Copyright Act.

In <u>Dastar</u>, Twentieth Century Fox Film ("Fox") brought a Lanham Act claim against Dastar Corporation ("Dastar") claiming that Dastar copied and repackaged a television series for which Fox held the distribution rights. <u>See</u> 539 U.S. at 25-27. "[T]he gravamen of [Fox's] claim [was] that, in marketing and selling [Dastar's product] as its own product without acknowledging its nearly wholesale reliance on [Fox's work], Dastar ha[d] made a 'false designation of origin . . . , which . . . [was] likely to cause confusion . . . as to the origin . . . of his or her goods.'" <u>Id.</u> at 31 (eighth, tenth, and eleventh alterations in original). On the one hand, the Court said, "[i]f 'origin' refer[red] only to the manufacturer or producer of the physical 'goods' that are made available to the public . . . , Dastar was the origin," and thus, Dastar would not be liable under the Lanham Act because Fox had not brought allegations that the public was confused as to whether Dastar was the origin of Dastar's physical goods. <u>Id.</u> On the other hand, if "'origin' include[d] the creator of the underlying work that Dastar copied, then . . . (perhaps Fox) was the origin of Dastar's product," and thus, Dastar could be liable under the Lanham Act because Fox had brought allegations that the public was confused as to whether Dastar was the origin of the creative content underlying Dastar's physical goods. <u>Id.</u> The <u>Dastar</u> Court concluded that the phrase "origin of goods," for purposes of the Lanham Act, refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods," the latter of which would fall under copyright law. 539 U.S. at 37. The Court stated that "[t]o hold otherwise would be akin to finding that [15 U.S.C. § 1125(a)(1)(A)] created a species of perpetual patent and copyright, which Congress may not do." <u>Id.</u> (citing <u>Eldred v. Ashcroft</u>, 537 U.S. 186, 208 (2003)).

Consequently, Dastar permits a cause of action for false designation of origin under the Lanham Act where a defendant's alleged use of a plaintiff's mark is likely to cause confusion as to "the producer of the tangible product sold in the marketplace," but not where the defendant's alleged use is likely to cause confusion as to "the person . . . that originated the ideas or communications that 'goods' embody or contain." 539 U.S. at 31-32.

Epic contends that Dastar bars Pellegrino's false designation of origin claim because the Complaint alleges that Epic created the false impression that Epic originated the Signature Move, which is the creative expression underlying Epic's Phone It In emote. According to Epic, Dastar established that this type of allegation is governed by the Copyright Act and thus, cannot be brought under the Lanham Act. We agree. The Complaint alleges the following: Pellegrino created the Signature Move, which was a product of "his own unique dancing style and his signature and original movements" (Compl. ¶ 17); Epic created the Phone It In emote by capturing and digitally copying Pellegrino executing the Signature Move (id. ¶¶ 51, 63); the Phone It In emote "embod[ies] the Signature Move" (id. ¶ 41); Epic "sell[s] the infringing Phone It In emote directly to players" (id. ¶ 46); and Epic misappropriated the Signature Move "to create the false impression that Epic created [the Signature Move]" (id. ¶ 47).

These allegations establish that the Signature Move is the creative idea underlying Epic's tangible good, the Phone It In emote. Furthermore, the Complaint does not plausibly allege that there was or could be any confusion as to who produced the Phone It In emote. At best, the Complaint alleges that there is confusion over who originated the Signature Move embodied in the Phone It In emote because Epic does not "credit[] Pellegrino as the dance's creator and owner." (Id. ¶ 47.) Under Dastar, a claim that concerns the origin of an idea embodied in a tangible good is governed by copyright law, not the Lanham Act. See Dastar, 539 U.S. at 32 ("[T]he phrase

'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent."); Maule v. Philadelphia Media Holdings, LLC, 710 F. Supp. 2d 511, 518-19 (E.D. Pa. 2008) (dismissing Lanham Act claim under Dastar because "[w]hile [the defendant] may not have been the originator of the photographs contained in its newspaper, it was the originator of the newspaper itself, the actual good being offered for sale to the public"; "the protections of the Lanham Act do not reach to the underlying expressions embodied in goods"). We therefore conclude that Dastar bars Pellegrino's claim for false designation of origin. Accordingly, we grant Epic's Motion to Dismiss as to Pellegrino's Lanham Act claim in Count VI to the extent that it is based on a false designation of origin theory.

### 2. False Endorsement

A facially plausible false endorsement claim under the Lanham Act must allege that "'the defendant's use of [the plaintiff's] mark to identify its goods or services is likely to create confusion concerning the plaintiff's *sponsorship or approval of those good[s]* or services.'" Dille Family Tr. v. Nowlan Family Tr., 207 F. Supp. 3d 535, 546 (E.D. Pa. 2016) (emphasis added) (quoting Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1014 (3d Cir. 2008)); see also 15 U.S.C. § 1125(a)(1)(A).

Epic argues that Dastar not only bars Pellegrino's false designation of origin claim, but also bars his false endorsement claim. However, we do not agree that Dastar necessarily bars Pellegrino's false endorsement claim. Dastar specifically considered only a claim for false designation of origin based on allegations that Dastar's alleged use of Fox's mark was likely to cause confusion as to the origin of the creative expression underlying Dastar's goods, not a claim

for false endorsement. 539 U.S. at 31. Thus, "nothing in the Supreme Court's opinion in <u>Dastar</u> bars prospective plaintiffs from bringing a false endorsement . . . claim under the Lanham Act." <u>Henley v. Devore</u>, Civ. A. No. 09-481, 2009 WL 10697982, at *7 (C.D. Cal. Jul. 8, 2009). Moreover, courts have allowed a plaintiff's false endorsement claim to proceed notwithstanding <u>Dastar</u> where a complaint alleges that the defendant used the plaintiff's identity or likeness to deceive the public into believing that the plaintiff endorsed the defendant's product. <u>See</u> <u>Beastie Boys v. Monster Energy Co.</u>, 66 F. Supp. 3d 424, 448 (S.D.N.Y. 2014) (noting that courts "have found viable false endorsement claims where, for example, [a product] bore a celebrity's name and likeness, . . . included an image of a celebrity, [or] featured [a] character dressed in a celebrity's signature costume" (citing <u>Bruce Lee Enter., LLC v. A.V.E.L.A., Inc.</u>, Civ. A. No. 10-2333, 2013 WL 822173, at *19–22 (S.D.N.Y. Mar. 6, 2013); <u>Jackson v. Odenat</u>, 9 F. Supp. 3d 342, 361 (S.D.N.Y. 2014); <u>Burck v. Mars, Inc.</u>, 571 F. Supp. 2d 446, 455–56 (S.D.N.Y. 2008))); <u>see also</u> <u>Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.</u>, 170 F. Supp. 3d 1249, 1269 (C.D. Cal. 2016) (noting that <u>Dastar</u> does not necessarily bar a plaintiff's false endorsement claim where the mark that the defendant allegedly infringed "is [the plaintiff's] celebrity identity").

Here, the Complaint alleges the following: "Pellegrino has depicted his Signature Move . . . in front of hundreds of thousands of fans" and "[v]ideos . . . in which he displays his Signature Move have . . . garnered millions of views" (Compl. ¶ 18); thus, "Pellegrino is unanimously credited with creating the Signature Move and exploiting it as his personal mark to identify himself and his performances as a saxophone player" (<u>id.</u> ¶ 24); Epic "developed the Phone It In emote to intentionally mimic Pellegrino performing the Signature Move" (<u>id.</u> ¶ 42); Epic named the emote "'Phone It In'" to "allude[] to Pellegrino's appearance in a Google Pixel 2 phone commercial in 2017" (<u>id.</u> ¶ 5); "[t]he reaction from many players worldwide was immediate recognition of the

emote as embodying the Signature Move" (id. ¶¶ 41); and, as a result of Epic's alleged use of "Pellegrino's likeness and the Signature Move," Epic has "creat[ed] the false impression that Pellegrino endorse[s] Fortnite" (id. ¶¶ 46-47). These allegations relate to Epic's use of Pellegrino's likeness and trademark to create the impression that Pellegrino endorses Fortnite and do not relate to the alleged confusion over the origin of the Signature Move. We therefore conclude that Pellegrino's false endorsement claim is distinct from his false designation of origin claim and thus, is not barred by Dastar.[5] Accordingly, we deny Epic's Motion to Dismiss as to Pellegrino's Lanham Act claim in Count VI to the extent that it is based on a false endorsement theory.

E. Copyright Preemption (Count VII)

Pellegrino's state trademark infringement claim asserts that Epic, by using Pellegrino's Signature Move in Fortnite, has misappropriated his trademark. Epic has moved to dismiss

---

[5] Epic relies primarily on Rudovsky v. W. Publ'g Corp., Civ. A. No. 09-727, 2010 WL 2804844 (E.D. Pa. July 15, 2010), to argue that Dastar necessarily bars Pellegrino's false endorsement claim. In Rudovsky, the plaintiffs brought a Lanham Act claim for false endorsement against two publishers of legal books, who listed the plaintiffs as authors of an annual update to a two-volume treatise on Pennsylvania criminal procedure even though the plaintiffs "had no part in the preparation of the [annual update] in question." Id. at *1. The plaintiffs contended that the annual update was largely a reprint of the annual update that they had authored for the defendants the previous year pursuant to a stand-alone agreement. Id. The court concluded that Dastar barred the plaintiffs' false endorsement claim because the "word 'origin' in the Lanham Act [did not] cover the authors of communicative products" as that would "cause[] the Lanham Act to conflict with the law of copyright . . . ." Rudovsky, 2010 WL 2804844, at *1 (second alteration in original) (quotation omitted). Consequently, the court granted summary judgment in the defendants' favor on this issue.

In spite of Rudovsky's application of Dastar to a false endorsement claim in the summary judgment context, we will not do the same here on a motion to dismiss for the reasons set forth above. To reiterate, we do not find that Dastar's analysis, which hinges on the meaning of the word "origin," applies to a false endorsement claim based on the misappropriation of a plaintiff's likeness. As noted above, Pellegrino's false endorsement claim alleges that Pellegrino is "unanimously credited with creating the Signature Move" (Compl. ¶ 24), and as a result of Epic's alleged use of Pellegrino's likeness, Epic has "creat[ed] the false impression that Pellegrino endorse[s] Fortnite" (id. ¶ 46). These allegations do not depend on the authorship or origin of the Signature Move and instead, assert a distinct claim for false endorsement. We therefore decline to follow the logic of Rudovsky.

Pellegrino's trademark infringement claim on copyright preemption grounds. Section 301 of the Copyright Act provides that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). To determine whether a complaint alleges state law claims that are preempted by the Copyright Act, a court must determine (1) "whether the work is the appropriate subject matter of a copyright" as specified in 17 U.S.C. §§ 102 and 103, and (2) "whether the state law creates rights equivalent to the exclusive rights protected by the Copyright Act" as set forth in 17 U.S.C. § 106. MCS Servs., Inc. v. Johnsen, Civ. A. No. 01–4430, 2002 WL 32348500, at *5 (E.D. Pa. Aug. 13, 2002)) (citing Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir. 1983)).

*1. Subject Matter Requirement*

"The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) (citing Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848-49 (2d Cir. 1997). "A work . . . need only fit into one of the copyrightable categories in a broad sense." Id. (citing Nat'l Basketball Ass'n, 105 F.3d at 848-50). This is because "'the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections.'" Fedex Ground Package Sys., Inc. v. Applications Int'l Corp., Civ. A. No. 03-1512, 2005 WL 2921633, at *2 (W.D. Pa. Nov. 4, 2005) (quoting Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 455 (6th Cir. 2001)) (citing Nat'l Basketball Ass'n, 105 F.3d at 848; United States ex rel. Pamela Birge v. Bd. of Trs. of the Univ.

of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1453 (7th Cir. 1996)); see also Nat'l Basketball Ass'n, 105 F.3d at 850 (noting that the "'subject matter of copyright' includes all works of a *type* covered by sections 102 and 103, even if federal law does not afford protection to them" (quoting ProCD, 86 F.3d at 1453)); but see Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1296 (11th Cir. 2004) (stating that "the preemptive effect of the Copyright Act extends only to those elements substantively capable of receiving federal copyright protection").

Epic argues that Pellegrino's Signature Move falls within the subject matter of copyright. Epic contends that because "choreographic works" are expressly a subject matter of copyright under 17 U.S.C. § 102(a)(4), the Signature Move is also the subject matter of copyright because the Complaint alleges that it is a dance. (See Compl. ¶¶ 4, 30, 47.) At issue therefore is whether dance falls within the subject matter of copyright. We conclude that it does. Specifically, we find that dance falls within the ambit of the copyright category "choreographic works." 17 U.S.C. § 102(a)(4). Although "the term choreography is not synonymous with dance," the U.S. Copyright Office, Compendium of U.S. Copyright Office Practices (3rd ed. 2017) (the "Compendium"), defines choreography as a "subset of dance [because] a work of authorship cannot be registered as a choreographic work unless it is comprised of dance steps, dance movements, and/or dance patterns." Id. § 805.5(B)(3); see also id. § 805.5(B) ("The dividing line between copyrightable choreography and uncopyrightable dance is a continuum, rather than a bright line.").[6] In fact, to register a claim to copyright in a choreographic work, the U.S. Copyright Office requires that "the

---

[6] "When Congress extended federal copyright protection to choreography, it intended to protect expressive works of authorship . . . ." Compendium § 805.5(B). Thus, dances that comprise only "ordinary motor activities, functional physical movements . . . or the like" are not copyrightable because they "lack the necessary creative expression to constitute a work of original authorship." Id.

[proposed] work is a dance." Id. § 805.4. We therefore conclude that the Signature Move, which is alleged to be a dance, is the appropriate subject matter of copyright law in satisfaction of the first prong of the test for copyright preemption.

## 2. Equivalency Requirement

To determine whether Pellegrino's state trademark infringement claim asserts rights equivalent to those protected by the Copyright Act, we must determine whether the Complaint has alleged "'an extra element'" for his state claim "'beyond mere copying, preparation of derivative works, performance, distribution or display'" such that the claim is "'qualitatively different from . . . a copyright infringement claim.'" Nicassio v. Viacom Int'l, Inc., 309 F. Supp. 3d 381, 396 (W.D. Pa. 2018) (quoting Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 217 (3d Cir. 2002)), aff'd, 776 F. App'x 761 (3d Cir. 2019); Quadratec, Inc. v. Turn 5, Inc., Civ. A. No. 13-6384, 2015 WL 4876314, at *11 (E.D. Pa. Aug. 13, 2015). If the Complaint does not allege an extra element, federal law will preempt his state claim. Nicassio, 309 F. Supp. 3d at 396 (quotation omitted).[7]

Epic argues that because Pellegrino's state trademark infringement claim relies solely on allegations that Epic copied Pellegrino's Signature Move without his permission, i.e., unauthorized copying, the Complaint does not allege any extra element, and thus, the state claim is preempted. The following allegations support Pellegrino's state trademark infringement claim: Pellegrino created his Signature Move, which was a product of "his own unique dancing style and his

---

[7] Although Pellegrino brings a state claim specifically for trademark infringement, we rely on cases that apply copyright preemption to claims of unfair competition because under Pennsylvania law, the test for common law trademark infringement and unfair competition involving trademarks are the same. Tillery v. Leonard & Sciolla, LLP, 521 F. Supp. 2d 346, 348 n.1 (E.D. Pa. 2007) (citing Fisons, 30 F.3d at 472).

signature and original movements" (Compl. ¶ 17); Epic "misappropriate[ed] Pellegrino's highly popular [Signature Move]," by "copying and coding [his] dances and movements" without Pellegrino's "express or implied consent" and without compensation (id. ¶¶ 1, 34, 44); "Epic uses the Signature Move . . . to create the false impression that Epic created [the Signature Move]" (id. ¶ 47; see also id. ¶ 41); and "players . . . [are] executing the 'Phone It In' emote . . . without referencing the Signature Move or crediting Pellegrino as the dance's creator and owner" (id. ¶ 47).

As Epic contends, these allegations do not describe conduct that goes "beyond mere copying, preparation of derivative works, performance, distribution or display." Nicassio, 309 F. Supp. 3d at 397 (quotation omitted). Rather, the crux of these allegations is that Epic copied Pellegrino's intellectual property without his permission and claims its contents as its own. As a result, we conclude that the Complaint has not alleged an extra element that would save Pellegrino's state trademark infringement claim from preemption. See Info. Handling Servs., Inc. v. LRP Publ'ns, Civ. A. No. 00-1859, 2000 WL 433998, at *2 (E.D. Pa. Apr. 18, 2000) (stating that "the vast weight of authority holds that state law misappropriation and unfair competition claims that are really claims for unauthorized copying are preempted" (citations omitted)); Daley v. Firetree, Ltd., Civ. A. No. 04-2213, 2006 WL 148879, at *4 (M.D. Pa. Jan. 19, 2006) (stating that when state unfair competition claims are based solely on allegations that "'A' copies 'B's' work without permission and claims it as 'A's' own," they fail the extra element test and are thus preempted); Quadratec, 2015 WL 4876314, at *12 (dismissing state unfair competition claim as preempted by the Copyright Act where the claim was based on nothing more than allegations of "unauthorized copying"); Franklin v. X Gear 101, LLC, Civ. A. No. 17-6452, 2018 WL 3528731, at *15 (S.D.N.Y. July 23, 2018) ("Common law trademark infringement claims and unfair

competition claims may be preempted where the claims are 'grounded solely in the copying of a plaintiff's protected expression.'" (quoting Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993))).[8]  We therefore further conclude that Pellegrino's state trademark infringement claim creates rights equivalent to the exclusive rights protected by the Copyright Act in satisfaction of the second prong of the test for copyright preemption.  Accordingly, we grant Epic's Motion to Dismiss as to Pellegrino's state trademark infringement claim in Count VII.[9]

---

[8] Pellegrino points to allegations that Epic has created confusion over whether Epic created the Signature Move (see Compl. ¶¶ 41, 47), and he argues that these allegations can serve as the extra element that saves his state trademark infringement claim from preemption.  A trademark infringement claim under Pennsylvania law requires that a complaint allege three elements:  "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services."  Fisons, 30 F.3d at 472 (citing Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 291 (3d Cir. 1991)).  As Pellegrino contends, the third element, i.e., the "likely to create confusion" element, of a trademark infringement claim can in some cases serve as an extra element that would allow a state trademark infringement claim to avoid copyright preemption.  See Wolstenholme v. Hirst, 271 F. Supp. 3d 625, 643 (S.D.N.Y. 2017) ("In some circumstances, . . . 'likelihood of confusion' . . . [is] considered [an] extra element[] that extend[s] beyond the Copyright Act." (quotation omitted) (add'l citation omitted)).

However, irrespective of the confusion element of a state trademark infringement claim, the claim "is nevertheless preempted if it is grounded solely on allegations of copying." Id. at 644 (citation omitted) (concluding that the plaintiff's trade dress infringement claim was preempted because "[t]he plaintiff allege[d] no facts supporting her . . . claim[] for . . . trade dress infringement beyond those of mere copying").  This is because where allegations "rest squarely on the unauthorized act of copying and distributing . . . [a]ny confusion experienced by . . . the public is a *result* of the alleged unlawful copying and distributing, and does not make [the plaintiff's] claim qualitatively different from [a] copyright claim."  Daley, 2006 WL 148879, at *5 (citations omitted).  Here, the confusion that Pellegrino alleges is just that type of confusion—confusion that is the result of the alleged unlawful copying.  Under these circumstances, the confusion alleged does not make the claim qualitatively different from a copyright claim and cannot satisfy the extra element required to avoid preemption.  We therefore reject Pellegrino's argument to the contrary.

[9] Pellegrino also argues that his state trademark infringement claim should not be preempted by the Copyright Act because he does not bring any copyright claims under the Copyright Act and thus, preemption would leave him with no other adequate remedy at law. Pellegrino relies on Mercado Latino, Inc. v. Indio Products, Inc., Civ. A. No. 13-1027, 2013 WL 2898224 (C.D. Cal. June 12, 2013), rev'd and remanded, 649 F. App'x 633 (9th Cir. 2016), to support this proposition.  Specifically, he points to language in Mercado Latino that states that "[t]he Supreme Court has cautioned that the Lanham Act should not be overextended into areas

F.  Trademark Dilution (Count VIII)

Pellegrino's Lanham Act claim for trademark dilution asserts that Epic, by using Pellegrino's Signature Move in Fortnite, has "diluted the distinctive quality" of his trademark. (Compl. ¶ 103.)  Epic has moved to dismiss Pellegrino's trademark dilution claim for failing to state a claim upon which relief can be granted, arguing that the Complaint fails to allege a necessary element of this claim.  To state a claim for trademark dilution under the Federal Dilution Act ("TDRA"), a complaint must plausibly allege that: "(1) the plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of the eight factors listed in [15 U.S.C.] § 1125(c)(1); (2) the defendant is making commercial use in interstate commerce of a mark or trade name; (3) defendant's use began after the plaintiff's mark became famous; [and] (4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services."  Ojays, Gigs, Inc. v. Assorted Music, Inc., Civ A. No. 08-4712, 2010 WL 11561097, at *2 (E.D. Pa. Aug. 27, 2010) (citing Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 163 (3d Cir. 2000)).

Epic argues that the Complaint fails to state a claim for trademark dilution because it does not plausibly allege facts that establish that Epic made trademark use of Pellegrino's Signature Move—that Epic used the Signature Move as Epic's own trademark to identify its own good, Fortnite.  As an initial matter, the parties do not dispute that a trademark dilution claim requires

---

traditionally covered by copyright law.  To the extent that the Copyright Act provides an adequate remedy, therefore, Lanham Act claims are preempted."  Id. at *4 (citations omitted).  However, nothing in Mercado Latino supports the proposition that a plaintiff's claims cannot be preempted merely because the plaintiff does not bring claims pursuant to the Copyright Act.  Moreover, we have not otherwise found authority to support Pellegrino's argument.  We therefore reject Pellegrino's argument that his decision not to bring a claim pursuant to the Copyright Act somehow saves his trademark claim from preemption.

that a complaint plausibly allege, in connection with the second element of the claim, that a defendant made trademark use of a plaintiff's mark, i.e., that the defendant used the plaintiff's mark as its own mark to identify its own goods or services. See 4 McCarthy on Trademarks and Unfair Competition § 24:122 (5th ed.) (stating that a complaint must allege that the defendant used the plaintiff's trademark "as its own trademark," to identify the defendant's "own goods or services"); Lions Gate, 170 F. Supp. 3d at 1270 (dismissing trademark dilution claim because the complaint failed to allege that "Defendants used the allegedly famous mark as Defendants' own mark or to identify Defendants' services"); Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 463, 524 (S.D.N.Y. 2008) (finding there was no trademark dilution where "[the defendant did] *not* use[] the . . . mark to identify *its own* goods and services"), aff'd in part, rev'd in part on other grounds, 600 F.3d 93 (2d Cir. 2010); Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co., 671 F.3d 526, 536 (5th Cir. 2012) (affirming dismissal of trademark dilution claim because "NBFP did not 'use' Ford's marks (as the TDRA contemplates that term) in identifying or distinguishing its own goods or services merely by reproducing them for customers").

Significantly, Pellegrino concedes that the Complaint does not allege that Epic used his Signature Move as Epic's own trademark to identify Fortnite. (See Pl.'s Opp. Mem. at 32.) Rather, he argues that the Complaint alleges that Epic made trademark use of his Signature Move by using it to identify the Phone It In emote. At the same time, the Complaint alleges that the "'Phone It In emote' is identical to Pellegrino's Signature Move." (Compl. ¶ 41 (emphasis added).) Pellegrino's position is therefore "tantamount to saying that [the] product itself—in this case, the [Signature Move]—can serve as its own trademark." EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 63 (2d Cir. 2000). However, the law is clear that a trademark cannot serve as a trademark for itself. See RDF Media Ltd. v. Fox Broad. Co., 372 F. Supp. 2d

556, 563 (C.D. Cal. 2005) (concluding that "'the product itself . . . can[not] serve as its own trademark'" (quoting EMI Catalogue, 228 F.3d at 63); EMI Catalogue, 228 F.3d at 64 ("Concluding that a song can serve as an identifying mark of the song itself would stretch the definition of trademark . . . too far and give trademark law a role in protecting the very essence of the song, an unwarranted extension into an area already protected by copyright law."); Whitehead v. CBS/Viacom, Inc., 315 F. Supp. 2d 1, 13 (D.D.C. 2004) ("[T]he Lanham Act protects the distinctive source-distinguishing mark, not the work as a whole.").  Therefore, under these circumstances, we conclude that the Complaint does not plausibly allege that Epic made trademark use of the Signature Move as is required to state a cognizable Lanham Act claim for trademark dilution.  Accordingly, we grant Epic's Motion to Dismiss as to Pellegrino's Lanham Act claim for trademark dilution in Count VIII.

## IV.    CONCLUSION

For the reasons stated above, we grant Epic's Motion to Dismiss as to Counts I-V, Counts VII-VIII, and Count VI insofar as it based on a false designation of origin theory.  However, we deny Epic's Motion as to Count VI insofar as Count VI is based on a false endorsement theory, and we therefore permit Pellegrino to proceed on this claim alone.

Pellegrino has requested that, in the event that we dismiss any claims, we grant him leave to amend those claims.  "Federal Rule of Civil Procedure 15(a) provides that leave [to amend] shall be freely given when justice so requires."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (alteration in original) (quotation omitted).  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)) (add'l citations omitted).  "'Futility means that the complaint, as amended, would fail to state a claim upon which relief could be

granted.'" <u>Travelers Indem. Co. v. Dammann & Co.</u>, 594 F.3d 238, 243 (3d Cir. 2010) (quoting <u>Burlington Coat Factory</u>, 114 F.3d at 1434). "In determining whether a claim would be futile, 'the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6).'" <u>Id.</u> (alterations in original) (quoting <u>Burlington Coat Factory</u>, 114 F.3d at 1434).

In this case, we conclude that amendment of the claims that we are dismissing would be futile because Counts I-III are barred by the First Amendment, Count VI is barred by <u>Dastar</u> insofar as it is based on a false designation of origin theory, Count VII is preempted by the Copyright Act, and the Complaint fails to allege facts that are necessary to support the claims in Counts IV, V, and VIII and additional allegations of fact would not save these claims. We therefore deny Pellegrino's request for leave to amend and dismiss these claims with prejudice.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.